## DANIEL ROTHERMEL v. JOHN MEYERLE.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF BERKS COUNTY.

Argued March 6, 1890—Decided October 6, 1890.
[To be reported.]

(a) The act of April 8, 1861, P. L. 258, prohibits, under penalty, the buy-
ing, as a hawker or peddler, within the counties of Berks and Franklin,
of any butter, eggs, etc., with intent to send the same for sale or barter
to any other market out of said counties, without payment of a license
fee of $10 for residents, and $20 for non-residents of the counties:

1. Said act is not invalid as making discriminations against citizens of
other states and in favor of citizens of Pennsylvania; its discriminations
are solely against non-residents of the counties named and markets out-
side thereof, and § 2, article IV. of the federal constitution has nothing
to do with distinctions founded on domicile merely.

2. No state has power to make any law which will affect free and unre-
strained intercourse and trade between the states, and a state statute im-
posing imposts or duties upon goods imported into or exported out of
the particular state, is in violation of the constitution of the United States
and therefore void.

3. But the act of 1861 cannot be regarded as laying a tax or impost upon
exports from the state, under a principle analogous to that of Brown v.
Maryland, 12 Wheat. 425; at most it could be no more than a taxing of
goods at the time of their purchase, and they remain liable to taxation
until transportation to another state is actually commenced: Per Mr
Justice CLARK.

Case Stated.

4. At all events, and even if said act of 1861 be invalid, under the inter-state commerce clauses of the United States constitution, in the case of the purchase of goods for sale in a market in another state, it is a valid and proper exercise of power as respects persons residing and doing business wholly within this state.

5. If a part of a statute which is unconstitutional in its operation, is independent of and readily separable from that which is constitutional, so that the latter may stand by itself, the part that is constitutional may be sustained and enforced, even though the unconstitutional provisions be contained in the same section of the statute.

6. The fourteenth amendment to the federal constitution, forbidding any state " to deny to any person within its jurisdiction the equal protection of the laws," did not execute itself so as to repeal, *proprio vigore,* state laws in existence at the time of its adoption, and it cannot be held to have repealed or in any way affected said act of 1861.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 310 January Term 1890, Sup. Ct.; court below, No. 74 November Term 1889, C. P.

To the number and term in the court below, there was entered, by appeal of the defendant from the judgment of a justice of the peace, an action brought by Daniel Rothermel, suing for himself as well as for the commonwealth, against John Meyerle, to recover the penalty of $100, imposed by the act of April 8, 1861, P. L. 258.

The said act is entitled " An Act relative to hucksters in the counties of Berks and Franklin," and provides that " no person or persons shall buy, or barter for, within the limits of the counties of Berks and Franklin, as a hawker or peddler, any butter, eggs, dried fruit, veal, or other article of produce, with intent to send the same for sale or barter to any other market out of the said counties, without first obtaining a license so to do, and paying therefor," to the county treasurer, the sum of $20, if residing outside the limits of said counties, or $10 if residing within said limits; and that any person engaging in huckstering within said counties, without having obtained such license, shall forfeit $100, to be recovered in a qui tam action, etc.

On February 3, 1890, by agreement filed, the following case was stated for the opinion of the court:

" John Meyerle, the defendant, is a resident of Montgomery

Opinion of Court below.

county. He came to Berks county in 1889 and bought, within said county, as a huckster or peddler, articles of produce with the intent to send the same for sale to Montgomery county and Philadelphia, without having obtained a license so to do, as required by the act of April 8, 1861, entitled 'An Act relative to hucksters in the counties of Berks and Franklin.'

" The present action is a suit regularly prosecuted for the recovery of the penalty of $100, provided for in the second section of said act of 1861. The plaintiff claims that the defendant is liable, under the terms of the act of 1861, for the $100, and the defendant claims that the act of 1861 is unconstitutional and void.

" If the court be of the opinion that said act is valid and operative, then judgment to be entered for the plaintiff for $100; but if the court be not of that opinion, then judgment to be entered for the defendant. Costs to follow judgment; either party reserving the right of appeal."

After argument, the court, ENDLICH, J., entered judgment for the defendant, filing the following opinion :

Defendant in this case has suffered judgment before an alderman, for the penalty inflicted by the act of April 8, 1861, P. L. 258, and has appealed to this court. The parties have agreed upon a case stated, turning upon the single question of the constitutionality of the act, and have submitted the same to the court for its opinion and judgment.

This court has expressed its opinion upon that question in the recent decision of Rothermel v. Ziegler, C. P. No. 59 November Term 1889, and its views, there stated, have undergone no modification. As supplementing, however, the discussion of the distinction there drawn between discriminations based upon citizenship and those based upon residence merely, in their relation to article IV., § 2, of the federal constitution, a more detailed reference to a few authorities may here be added.

It was held in Conner v. Elliott, 18 How. 591, that the privileges and immunities secured by that provision are those only which grow out of citizenship. As was said by Mr. Justice MILLER, in the Slaughter-House Cases, 16 Wall. 36, adopting the language of Mr. Justice WASHINGTON, in Corfield v. Coryell, 4 Wash. C. C. 371 : " We feel no hesitation in confining

these expressions to those privileges and immunities which are
in their nature fundamental,"—rights belonging to an individ-
ual as a citizen of the state. And it was said by Mr. Justice
GRIER, in Parker v. Overman, 18 How. 137 : "Citizenship
and residence are not synonymous terms;" and by Mr. Justice
HARLAN, in Robertson v. Cease, 97 U. S. 648: "Citizenship
and residence, as often declared by this court, are not synony-
mous terms." To the same effect are Grace v. Insurance Co.,
109 U. S. 278, and Menard v. Goggan, 121 U. S. 253.

For the reasons given in Rothermel v. Ziegler, supra, the
court reasserts its opinion that the act of 1861 is unconstitu-
tional and void, but desires it to be distinctly understood that
those reasons are not based upon the discrimination made by
the act, as affected by article IV., § 2, or the fourteenth amend-
ment, or by the commercial clauses, but solely upon the ground
that the necessary operation of the act violates the latter by
prohibiting, except under certain indirect but substantial bur-
dens and restrictions, the removal of products of the county of
Berks, etc., to markets in other states and countries. It is the
effect of a legislative provision that determines its constitu-
tionality or unconstitutionality : Penna. R. Co. v. Riblet, 66
Pa. 164, 169. . . . . Judgment is entered for defendant.

—The opinion in Rothermel v. Ziegler, referred to in the
foregoing opinion, was in part as follows :

The statute in question having been passed in 1861, in viola-
tion of no provision of the then constitution of this state, is
equally unaffected by anything contained in that of 1874 : See
Indiana Co. v. Agriculture Soc., 85 Pa. 357 ; Allegheny Co. v.
Gibson, 90 Pa. 397. It is, however, claimed that the statute
offends against the constitution of the United States, article
IV., § 2, and against article XIV. of the amendments to said
constitution.

Article IV., § 2, provides that the "citizens of each state
shall be entitled to all privileges and immunities of citizens of
the several states."

The attention of the court has been called to the decision in
Groh v. Commonwealth, 6 Pa. C. C. R. 130, in which an act
entirely similar to the one under discussion was, by reference
to this provision of the constitution, held void as against citi-
zens of other states. With the utmost respect for the opinion

of the learned judge who rendered that decision, this court is constrained to differ with this view. The clause of the constitution in question requires only that a citizen of another state be accorded the same rights under our laws as the citizens of Pennsylvania: Lemon v. State, 20 N. Y. 562, 608. It has nothing to do with distinctions founded on residence: Ibid.

A native born citizen of Pennsylvania, residing out of the state or even out of the counties of Berks and Franklin, is given no rights by this act which are denied to a citizen of another state, and the latter, if residing in these counties, has all the rights under it which a citizen of Pennsylvania has. Neither a native born citizen of Pennsylvania, residing out of the state, nor a citizen of another state not residing in Pennsylvania, can claim any rights, which under our laws belong only to residents of the state: Lemon v. State, supra. Thus, a statute of a state requiring non-resident suitors to give security for costs, does not offend against the constitutional provision referred to, because relating only to residence and not to citizenship: Cummins v. Wingo (S. C.), 10 S. E. Rep. 107.

Nor does article IV., § 2, protect citizens of this state from discriminating legislation within the state: Slaughter-House Cases, 16 Wall. 36, 75-77.

The fourteenth amendment, § 1, forbids every state "to deny any person within its jurisdiction the equal protection of the laws." Whilst the purpose sought to be accomplished by this provision has been held to be, "that all persons should be equally entitled to pursue their happiness and acquire and enjoy property:" Barbier v. Connolly, 113 U. S. 27, 31, it has also been held that the fourteenth amendment, as, indeed, is shown by the provision made in its fifth section, did not execute itself: Griffin's Case, Chase's Decisions, 364. It cannot, therefore, be held to have repealed, of itself, the act of April 8, 1861, under which this judgment was entered: See Lehigh Iron Co. v. Lower Macungie Tp., 81 Pa. 482; Allegheny Co. v. Gibson, supra. Nor has the court been referred to, or been able to find, any decision in which such retrospective and self-executing efficacy was ascribed to that amendment. It simply established a principle, which congress was left to enforce by legislation, and which no state legislature would, after the adoption of the amendment, be at liberty to disregard or violate.

The act of Congress of May 31, 1870, c. 114, § 16, U. S. Rev. St., § 1977, obviously affords no aid in the present case. Article 1, however, of the United States constitution, provides § 8, cl. 4, that congress shall have power " to regulate commerce with foreign nations and among the several states ; " and in § 10, cl. 2, that "no state shall, without the consent of the Congress, lay any imposts or duties on imports or exports."

The act of 1861 does not, it is true, undertake to do the one or the other directly and in terms ; but it imposes a license tax upon persons, or perhaps upon the business and occupation of persons, who may buy certain commodities in the counties of Berks and Franklin with intent to send the same for sale or barter to "any other market out of the said counties." This certainly includes a market outside of the state, or a foreign market, and, as will hereafter appear, cannot be limited to markets within the state. Whenever a commodity has begun to move as an article of trade from one state to another, commerce in that commodity between the states has commenced : The Daniel Ball, 10 Wall. 557. The nature of the commodities referred to specially cannot be deemed to limit the comprehensiveness of the phrase used in the act. With the facilities afforded at the present day, nearly everything is or may be made the subject of inter-state and foreign commerce. A state law imposing a toll upon logs floated into an adjoining state : Carson Riv. Lumb. Co. v. Patterson, 33 Cal. 334 ; punishing transportation of merchandise out of the state : State v. Saunders, 19 Kan. 127 (27 Am. Rep. 98), has been held unconstitutional ; but it has also been decided that, " where the business or occupation consists in the sale of goods, the license tax required for its pursuit is in effect a tax upon the goods themselves. If such a tax be within the power of the state to levy, it matters not whether it be raised strictly from the goods, or indirectly from them through the license to the dealer ; but if such tax conflicts with any power vested in congress by the constitution of the United States, it will not be any the less invalid because enforced through the form of a personal license : " Welton v. Missouri, 91 U. S. 275, 278 ; Walling v. Michigan, 116 U. S. 146, 461.

It would appear that the license exacted by the act of 1861, must, under this view, be held, in so far as the articles may be intended to be taken to markets in other states or to foreign

Opinion of Court below.

markets, to be a tax directly upon the goods, and upon their removal either to other states or for export; in a word, a regulation of inter-state commerce in the one case, an impost upon exports in the other, a violation of the constitution in either. It is true, a state may pass laws upon avocations and employments pursued in the state, not strictly connected with foreign or inter-state commerce : Robbins v. Taxing Dist., 120 U. S. 489, 494; but, in this case, the avocation or employment assumed by the act and legislated upon is directly connected with inter-state and foreign commerce, and so far as the goods bought are intended for such, it is a regulation bound to affect each.

Nor can it be claimed that a regulation, such as this, properly falls within the reserved police power of the state. No doubt the establishment of a general license system may be regarded as coming within that power: License Cases, 5 How. 504, 595. But it is said in Railroad Co. v. Husen, 95 U. S. 465, that "what that power is, it is difficult to define with sharp precision. It is generally said to extend to making regulations promotive of domestic order, morals, health and safety." It would require no little ingenuity to bring this act within any of these categories. Its obvious purpose was to keep home products for the home market. "But, whatever may be the nature and reach of the police power of a state, it cannot be exercised over a subject confided exclusively to congress by the federal constitution : " Railroad Co. v. Husen, supra. In the case of the present statute, the encroachment upon the power delegated to congress is, no doubt, trifling. But the principle involved in prohibiting, except under certain burdens and penalties, the removal of the products of Berks county to a market outside of the state, would be equally involved in an attempt of the legislature to exact payment from any of the great manufacturing interests in the state, for the privilege of carrying their products into inter-state or foreign commerce.

So far, then, as the act of 1861 operates to affect inter-state or foreign commerce, it is obnoxious to the objection of unconstitutionality. But if this feature can be severed from it, it is the duty of the court to uphold that which is lawful, the question of partial or entire unconstitutionality depending upon a consideration of the law, and in what manner and to what extent the unconstitutional portion affects the remainder : Cooley

on Const. Lim., 5th ed., 211–212, and cases there cited. The main object of the law, in this instance, obviously was to prevent, except under certain restrictions, impositions and penalties, the removal of certain products of the counties named to markets without their limits, irrespectively as to their destination beyond the county lines, or beyond the borders of the state, or out of the country; and the secondary object was, to discriminate between resident and non-resident hucksters. There is no other object manifest in the act. It must be remembered that the act of April 9, 1856, P. L. 278, has established general regulations as to hucksters in Berks county and forbidden any person under a penalty of $50 to buy, or exchange, or barter, any kind of goods or groceries whatever for marketable produce, with intention of selling the same, without first obtaining a license. And the supplement to this act, passed April 18, 1856, P. L. 413, directed that hucksters were to be classified and rated, and to pay license fees, as wholesale dealers and retailers. The general subject of buying, etc., with the intent of re-selling, was thus already provided for by enactments which made no discrimination between residents and non-residents, nor between an intent to re-sell in the county and an intent to re-sell out of the county. The single purpose of the act of 1861 must consequently have been to provide for these particular matters.

If the purpose of an act is "to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion:" Cooley on Const. Lim., 213. This principle might save the statute, so far as goods not intended for removal beyond the state are concerned, if its main purpose could be said to be, for instance, the raising of revenue, or the regulation of huckstering in general, in these counties. Instances of this kind are to be found in Tiernan v. Rinker, 102 U. S. 123; Stontenburg v. Hennick, 129 U. S. 141; Asher v. Texas, 128 U. S. 129; Robbins v. Taxing Dist., 120 U. S. 489; Leloup v. Mobile, 127 U. S. 648; United States Exp. Co. v. Hemmingway, 39 Fed. R. 60; United States Exp. Co. v. Allen, 39 Fed. R. 712, and other cases. In each of them, where the act was declared unconstitutional in one aspect only and upheld in others, it will be found that the main intent of the act

was such as to be preserved and capable of being sufficiently effected by what remained; that the main intent of the act did not interfere with any power delegated to congress, and did not essentially connect itself with, or depend for its execution upon, the effect of the provisions or operation declared unconstitutional. No such features are presented in this case. By eliminating the unconstitutional operation of the restrictions imposed by the act of 1861, the whole design and purpose of the same are rendered abortive.

Again, the doctrine that an act may be unconstitutional and void in part, or in one aspect, and yet be sustained in another, has no room where "it cannot be presumed that the legislature would have passed the one without the other:" Cooley on Const. Lim., 212. It certainly cannot be assumed that the legislature would have passed an act requiring a license to be taken out by one who bought goods in Berks county, which he intended to sell in Lancaster county, while permitting another, unlicensed, to buy the same class of goods in the same county, to be sold in New York or Liverpool. To give this effect to the present act would be to make a new law. And this same consideration forbids the court to construe the phrase "any other market" as limited to any other market in the state, by an application to the language of the act under discussion of the principle, that, where the terms of a statute permit of two constructions, the one making it unconstitutional and the other bringing it within the constitutional limitations, the latter is to be adopted: Commonwealth v. Bennett, 16 S. & R. 243; Presser v. Illinois, 116 U. S. 252, 269. For, that principle does not warrant the avoidance of unconstitutionality in a statute by forcing upon its language a meaning, which, upon a fair test is repugnant to it: French v. Teschemaker, 24 Cal. 515; Bishop on Written Laws, § 90. Where the language will not fairly bear a construction consistent with the constitution, the court can only refuse to enforce the act: Attorney General v. Eau Claire, 37 Wis. 400.

The conclusion is, that the act of April 8, 1861, P. L. 258, is unconstitutional and void. Nor does this conclusion conflict with the decision of the Supreme Court of this state in Commonwealth v. Shaffer, 128 Pa. 575. The only objection made to the act there under discussion and entirely similar to that

of 1861, was that the discrimination between residents and non-residents violated article IV. § 2 of the United States constitution. Without deciding whether or not this position was tenable, the Supreme Court held that the defect, if it was one, was cured by a later act removing the discrimination, and the validity of the act, as amended, not being further disputed by the defendant, the Supreme Court passed upon no other question.

Judgment having been entered for the defendant, the plaintiff took this appeal, specifying that the court erred:

2. In entering judgment for the defendant.

3. In not entering judgment for the plaintiff for $100.

*Mr. Jefferson Snyder* (with him *Mr. J. H. Rothermel, Mr. David Levan* and *Mr. A. H. Rothermel*), for the appellant:

1. The manifest intention of the act of April 8, 1861, P. L. 258, was not so much to prevent the carrying of farm produce from the county, as to prevent the traveling over the county of persons who for all practical purposes were hawkers and peddlers. It is manifest from the many statutes on the subject that the legislature of this state has considered it essential to the well-being of the people that restrictions should be placed upon the practice of traveling about by persons engaged in buying and selling. Every state in the union has such laws, and they come within the police powers of the state of which Mr Justice FIELD speaks, in Bowman v. Railway Co., 125 U. S. 503. It is perhaps unnecessary to add anything to what the court below has said in answer to the proposition that the act of 1861 is avoided by the fourteenth amendment to the federal constitution. Judged by late decisions of the Supreme Court of the United States, it does not violate that amendment: Barbier v. Connolly, 113 U. S. 27; Soon Hing v. Crowley, 113 U. S. 703; Missouri etc. Ry. Co. v. Humes, 115 U. S. 512; Missouri etc. Ry. Co. v. Mackey, 127 U. S. 205; Minneapolis etc. Ry. Co. v. Beckwith, 129 U. S. 26.

2. Does the statute violate the first article of the constitution of the United States by interfering with inter-state commerce or seeking to impose a tax upon exports? We do not concede that it is an attempt to regulate inter-state commerce,

Arguments.

or to lay a duty on exports. It does not impose a tax because the farm produce is carried out of the state, but it imposes it on the man who, as a huckster, goes about to buy up produce, with intent to sell beyond the county lines. That he may choose to carry the goods still farther, and take them into another state, does not seem to affect the question. If, under the principle of Welton v. Missouri, 91 U. S. 275, this license tax is a tax upon the goods themselves, it is levied at a time when they are still a part of the general property of the state, and they are liable to taxation until actually started in a course of transportation to another state: Welton v. Missouri, supra; Coe v. Errol, 116 U. S. 517. Mere intent to export, which is the only thing that may connect the goods referred to in our statute with inter-state commerce, is not enough to take them out of the operation of the taxing power: Kidd v. Pearson, 128 U. S. 24.

3. But, conceding that the statute is invalid, as a regulation of inter-state commerce, in so far as it may apply to a huckster who buys for the purpose of selling again in another state, the only consequence is that the act cannot be enforced against such a party. The defendant is not protected by the constitutional limitation, because he is not engaged in inter-state commerce. The commerce he is engaged in is wholly within the state, and the act is valid as to it: State Freight Tax, 15 Wall. 232; Fargo v. Michigan, 121 U. S. 241; Wabash etc. Ry. Co. v. Illinois, 118 U. S. 557; Robbins v. Taxing District, 120 U. S. 489; Leloup v. Mobile, 127 U. S. 648. The court, by narrowing the purpose of the statute, and imputing to the legislature the bare intent to restrain the exportation of farm produce, reached the conclusion that, as the main purpose of the act fails, because of unconstitutionality, the whole act must fail. But the rule is clearly otherwise in cases of this character. The statute is simply inoperative as to the objects withdrawn from state control, and as to everything else it is valid.

*Mr. Edwin Sassaman* (with him *Mr. Aug. S. Sassaman*), for the appellee :

1. The natural and obvious meaning of the phraseology, "any other market out of said counties," in the act of 1861, includes markets outside the state, and this natural meaning

Arguments.

cannot be ignored in order to avoid the consequence of unconstitutionality: Robbins v. Taxing District, 120 U. S. 489. The language of the act being plain, there is no room for construction by the courts: Endlich on Statutes, §§ 4, 27. The regulation of the act of 1861 cannot be brought under the police power of the state, in analogy to the decision in Commonwealth v. Brinton, 132 Pa. 69, upon the acts relating to hawkers and peddlers. There is a definitely established legislative distinction between hawkers and peddlers, on the one hand, and hucksters on the other, there being separate and distinct sets of statutes for the regulation of these two classes of traders respectively, and this distinction the courts must regard: Bourguignon B. Ass'n v. Commonwealth, 98 Pa. 54; Endlich on Statutes, §§ 365, 367. There is also an essential natural distinction between them.

2. There is no legislative policy directed against hucksters, and no act relating to huckstering puts itself on any such ground as those relating to peddling recite. The acts relative to the former are trade regulations, and, when they restrict the removal of goods beyond the county, they necessarily affect inter-state trade, which cannot be taxed at all by a state even though the same amount of tax be laid on domestic commerce: Robbins v. Taxing District, 120 U. S. 489. There can have been but one purpose in the act of 1861, viz., the discouragement of the removal of Berks county products out of the county, as the subject of persons traveling about to buy up provisions was already regulated by the act of April 18, 1856, P. L. 413, and the only change in the system made by the act of 1861 was to increase the fees to be exacted from hucksters re-selling out of the county, incidentally discriminating against non-residents. Such discrimination renders it void: Groh v. Commonwealth, 6 Pa. C. C. R. 131; Ward v. Maryland, 12 Wall. 418; United States v. Cruikshank, 92 U. S. 554; Barbier v. Connolly, 113 U. S. 31; Soon Hing v. Crowley, 113 U. S. 709; Railway Co. v. Humes, 115 U. S. 523; Powel v. Commonwealth, 127 U. S. 684.

3. The act is void for violation of the commerce clauses of the United States constitution. When a huckster, whose business is selling at markets in another state, buys up articles of produce, the moment he acquires possession of them they are

started upon their journey and become articles of inter-state commerce. He himself is a carrier to the outside market. But, even if this were not so, the fact remains that the license exacted is a tax upon an occupation directly connected with inter-state commerce: Robbins v. Taxing District, supra. The decisions of the United States Supreme Court, cited by the appellant, are inapplicable to the present case, in view of the object of this statute. As pointed out by the court below, if the unconstitutional feature of the act be eliminated from it, its whole design and purpose are rendered abortive, and in such a case the whole act must be held void: Cooley on Const. Lim., 212, 213; Endlich on Stat., § 538. The cases relied on by the appellant recognize and enforce this principle, and, instead of convicting the court below of error, they sustain the distinctions upon which its judgment is based.

OPINION, MR. JUSTICE CLARK:

The defendant was a resident of Montgomery county, and, for anything that appears, was a citizen of this state. He was, in the year 1889, a huckster or peddler, and, in the pursuit of his business, bought articles of produce in Berks county, with the purpose of shipping the same for sale in Montgomery county and in the city of Philadelphia. His residence and his business being wholly confined to the state of Pennsylvania, he cannot, of course, be said to have been engaged in inter-state commerce. But it is contended that as the act of April 8, 1861, P. L. 258, applies as well to the sale or barter, in such articles of country produce, in the markets of other states, as in the markets of this state outside of Berks county, and imposes a penalty for violation of its provisions, it is wholly unconstitutional and void, and imposes no obligation even upon those not engaged in inter-state commerce.

Article 1, § 8, cl. 4, of the constitution of the United States, provides that congress shall have power "to regulate commerce with foreign nations, and among the several states," and § 10, cl. 2, of the same article, "that no state shall, without the consent of congress, lay any imposts or duties on imports or exports." As the "imports" and "exports" mentioned in the latter clause quoted, have reference only to goods brought from or carried to foreign countries, and not to goods transported

Opinion of the Court.

from one state to another: Woodruff v. Parham, 8 Wall. 123; Brown v. Houston, 114 U. S. 622, no question can arise as to their application to this case. The articles mentioned in the act are " butter, eggs, dried fruit, veal, or other article of produce." As the commodities particularly intended are specified, any " other article of produce " would be restricted to articles ejusdem generis. It is scarcely reasonable to suppose that purchases for exportation from the country were in the mind of the legislature. But the power to regulate commerce among the several states is granted to congress in terms as absolute as is the power to regulate commerce with foreign nations, and that power is exclusive whenever the matter is national, or admits of a uniform system or plan of regulation. No state has power to make any law which will affect the free and unrestricted intercourse and trade between the states: Brown v. Houston, supra.

In Welton v. Missouri, 91 U. S. 275, it was held that a license tax required for the sale of goods is, in effect, a tax upon the goods themselves. " If such a tax," says the court in that case, " be within the power of the state to levy, it matters not whether it be raised directly from the goods, or indirectly from them, through the license to the dealer; but, if such tax conflicts with any power vested in congress by the constitution of the United States, it will not be any the less invalid because enforced through the form of a personal license." In Brown v. Maryland, 12 Wheat. 425, 444, it was sought to impose a license tax upon an importer of foreign goods, and it was held that the exaction of a license tax from the importer was simply the imposition of a tax on the goods imported, and that a state tax, to this effect, was in conflict with the commerce clauses of the constitution. A tax on the occupation of an importer, as it must add to the price of the article to be paid by the consumer, or by the importer himself, in like manner as a direct duty, was held to be the same as a tax on importation. Upon the reasoning of these and other cases, the appellee's contention is that the exaction of a license fee, under the act of 1861, may in the same sense be regarded as a tax upon the property purchased by the huckster, and, as respects goods transported into other states, as an impost on the goods exported. We cannot see how this contention can be sustained. The license fee, at

Opinion of the Court.

the best, could only be treated as a tax on the goods at the time of the purchase, and they were then part of the general mass of property within the state liable to taxation, and so remained until the goods began to move as an article of trade from one state to another, at which time commerce in that commodity may be said to commence : The Daniel Ball, 10 Wall. 557. A commodity cannot be said to move as an article of trade from one state to another, until the business of transportation is actually commenced. It does not cease to be part of the general mass of property of the state, subject, as such, to its jurisdiction and to taxation in the usual way, until it has been shipped or entered with a common carrier for transportation to another state, or has been started upon such transportation on a continuous route or journey. Hence logs cut and hauled to the place where they were to be floated to another state, but kept in that place until it was convenient to float them away, were not yet commodities of inter-state commerce, but were taxable : Coe v. Errol, 116 U. S. 517. Even articles of import, as soon as the importer has so acted upon them that they become mixed in the general mass of property, are in like manner liable to taxation. If the commerce clauses of the constitution cover such a case as this, under the act of 1861, then it would seem that any statute, imposing a license or other tax upon any mercantile, manufacturing, or other business pursuit, would be without authority of law and void, for the persons thus taxed may carry these pursuits into inter-state commerce.

Of course, no state can, by taxation, or otherwise, discriminate against the citizens of other states, and in favor of its own citizens, as to the business carried on by them in the state. Article IV., § 2 of the federal constitution, provides that citizens of each state are entitled to all the privileges and immunities of citizens of the several states : citizens of other states, therefore, must be accorded the same rights, under our laws, as the citizens of Pennsylvania. But the discrimination contained in the act of 1861 is not against citizens of other states more than citizens of our own state, nor against foreign markets more than domestic markets; it is directed, not against citizens of other states, but against non-residents of the county of Berks, and against markets outside of that county. Article IV., § 2 of the constitution of the United States has noth-

ing to do with the distinctions founded on domicile, merely: Lemmon v. People, 20 N. Y. 608, and hence it is that non-resident suitors may be required to give bail for costs, when persons residing in the state are not so required, etc. As to the purpose and effect of the section referred to, see Singer Mfg. Co. v. Wright, 33 Fed. R. 121 ; Machine Co. v. Gage, 100 U. S. 676 ; 11 Amer. & Eng. Encyc. of Law, 548, and cases there cited.

But, even if the act of 1861 might, in the case of a purchase of goods for sale in the markets of another state, be deemed obnoxious to the inter-state commerce clauses of the constitution, we are of opinion that no question of inter-state commerce is involved in this particular case. The defendant's employment, as we have said, was one pursued exclusively within the state, and it is conceded that the state has power to pass laws imposing taxes upon avocations in no way connected with inter-state or foreign commerce. As respects persons pursuing this employment wholly within the state, however it may be in other cases, it was certainly a valid and proper exercise of legislative power. A statute may be void only so far as its provisions are repugnant to the constitution: one provision may be void, and this will not affect other provisions of the statute. If the part which is unconstitutional in its operation, is independent of, and readily separable from that which is constitutional, so that the latter may stand by itself, as the reasonable and proper expression of the legislative will, it may be sustained as such ; but, if the part which is void is vital to the whole, or the other provisions are so dependent upon it, and so connected with it, that it may be presumed the legislature would not have passed one without the other, the whole statute is void: Gibbons v. Ogden, 9 Wheat. 203 ; City of New York v. Miln, 11 Pet. 102; Packet Co. v. Keokuk, 95 U. S. 80 ; Tiernan v. Rinker, 102 U. S. 123 ; Presser v. Illinois, 116 U. S. 252; Lea v. Bumm, 83 Pa. 237 ; In re Ruan St., 132 Pa. 257 ; Sedg., St. & Const. Law, 413. The constitutional and the unconstitutional provisions may even be contained in the same section of the law, and yet be perfectly distinct and separable, so that the former may stand though the latter fall: the question is, whether the several provisions are essentially and inseparably connected in substance: Hagerstown v. Dech-

ert, 32 Md. 369 ; 3 Amer. & Eng. Encyc. of Law, 677, and cases there cited.

Assuming the invalidity of the act of 1861, in so far as in its operation it is supposed to affect inter-state commerce, we are of opinion that the act is valid as to persons residing and doing business wholly within the state. That particular feature of the act, which, in its operation, is alleged to be unconstitutional, is easily and readily separable from that which is valid: the act can stand as well without as with it. The operation and effect of the statute may be restricted to the proper constitutional limits, and the object of the statute attained within these restrictions: at all events, it will not be presumed that the legislature would not have passed the statute to operate within the limitations imposed by the constitution. The real purpose of the act, doubtless, was to keep this kind of products for the home market, but, in view of the proximity of the great city of Philadelphia, and of other markets in eastern Pennsylvania, it is exceedingly probable that the legislature intended that the statute would accomplish its purpose within the bounds of the state.

In Robbins v. Taxing Dist., 120 U. S. 489, a license tax was imposed by the laws of Tennessee upon all drummers, etc., not having a licensed house or business within the taxing district of Shelby county, which, of course, included drummers representing business houses whether in or out of the state of Tennessee : but, as the goods sold by such drummers as represented houses outside of the state were not within the jurisdiction of the state, until, by the act of the importer they should become mixed with the mass of the goods within the state, the Supreme Court of the United States held that, as to this class of drummers, the statute affected inter-state commerce and to that extent was void ; yet, not only in the opinion of the court, but in the dissenting opinion also, although the question was not directly involved, the validity of the statute as to drummers representing houses within the state was conceded. "To say that the tax, if invalid as against drummers from other states," says Mr. Justice BRADLEY, in the opinion of the court, "operates as a discrimination against the drummers of Tennessee, against whom it is conceded to be valid, is no argument, because the state is not bound to tax its own drummers ; and,

if it does so, whilst having no power to tax those of other states, it acts of its own free will, and is, itself, the author of such discrimination.    As before said, the state may tax its own internal commerce ; but that does not give it any right to tax inter-state commerce."

Nor, for the reasons stated by the learned judge of the court below, is the act of 1861 affected by the fourteenth amendment. The case turns upon the effect of what may be termed the commerce clause of the constitution ; and we are of opinion that the act of 1861 was not in this case violative of these provisions, and that, therefore, judgment should have been entered for the plaintiff.

> The judgment is reversed, and judgment is now entered on the case stated, in favor of the plaintiff, for $100, and costs.