# Commonwealth, to use, v. Metropolitan Casualty Insurance Co. of New York

*Douglas D. Storey*, for plaintiff.

*George V. Hoover* and *Snyder, Miller & Hull*, for defendant.

HARGEST, P. J., July 11, 1932.—In this case a verdict for $567.50 was rendered by agreement, subject to a reserved question as to whether the plaintiff was entitled to recover. The following facts pleaded in the statement of claim must be taken as true: The Commonwealth entered into a contract with J. H. Bowman to install the heating and ventilation work in the North Office Building in Capitol Park, Harrisburg. Bowman and the defendant company delivered a bond in the sum of $34,500 "to be paid to the said Commonwealth of Pennsylvania or its assigns," conditioned for the faithful performance of the work, and that the contractor "shall pay all lawful claims of subcontractors, materialmen and laborers for labor performed and materials furnished in the carrying forward, performing or completing of said contract." The plaintiff, in reliance upon the terms of Bowman's bond, submitted to Bowman a proposal to install the Johnson System of Temperature Regulation and entered into a contract therefor. Bowman paid the defendant a valuable consideration for the bond. The Commonwealth was under no legal liability to the plaintiff for any work done or materials furnished under the plaintiff's contract. The Commonwealth permitted this suit to be brought in its name to the use of the Johnson Service Company.

A number of cases have discussed the question of the right of subcontractors to bring suit upon surety bonds. It is not necessary to specifically refer to all of these cases. The more pertinent of them are Greene County, for use,

*v.* Southern Surety Co., 292 Pa. 304, Portland Sand and Gravel Co. et al. *v.* Globe Indemnity Co., 301 Pa. 132, and H. H. Robertson Co. *v.* Globe Indemnity Co., 268 Pa. 309. In the last case it was held that a bond given to the Commonwealth under section thirteen of the State Highway Act of May 31, 1911, P. L. 468, was intended to protect the subcontractor, was for his benefit and could be enforced by him in an action either in his own name or the name of the Commonwealth for his use. In the Greene County case an action was brought in the name of the county by a materialman, against the surety, upon a bond which provided that the contractor "shall well and truly pay for all material furnished . . . [for] the . . . highway." In an opinion fully discussing the right of third party beneficiaries to recover, the Supreme Court held that the plaintiff had no right to sue or recover against the surety, because the statute did not clearly confer such right. In the Portland Sand and Gravel Company case the bond was given to "the Commonwealth of Pennsylvania for the use of the County of Northampton and any other corporation or person interested," and provided in terms for the right on the part of subcontractors to sue and recover, "subject, however, to the priority of the claim and judgment of the said county." It was held that those who were within the protected class might sue the surety on the bond.

As the law now stands, it appears that there must be some statute requiring or authorizing a bond to be given for the protection of subcontractors and materialmen or there must be provisions in the principal contractor's bond which protect third parties, as subcontractors or materialmen, and give them the right to sue thereon. The bond in question is not specific in terms, such as that in the case of Portland Sand and Gravel Co. et al. *v.* Globe Indemnity Co., supra, in protecting subcontractors and materialmen and giving them the right to sue.

The question, therefore, is whether there is any statute which gives the plaintiff that right. The plaintiff relies upon section six of the Mechanics' Lien Law of June 4, 1901, P. L. 431, as amended by the Act of April 22, 1903, P. L. 255, which provides as follows (italics ours):

"Where labor or materials are furnished for any structure or other improvement for purely public purposes, in lieu of the lien given by this act, any subcontractor who has furnished labor or materials thereto may give a written and duly sworn notice to the Commonwealth, or any division or subdivision thereof, or any purely public agency thereunder, being the owner of the structure or other improvement, setting forth the facts which would have entitled him to a lien as against the structure or other improvement of a private owner; whereupon, unless such claim be paid by the contractor, or adequate security be given or have been given to protect all such claimants, the Commonwealth, or the division or subdivision thereof, or purely public agency thereunder, shall pay the balance actually due the contractor into the court of common pleas of the county in which the structure or other improvement, or the principal part thereof, is situate, for distribution to such parties as would be entitled thereto were it paid into court in the case of a private owner; *and the Commonwealth hereby does, and any division or subdivision thereof, or any purely public agency thereunder, may require that any contract for public work shall, as a condition precedent to its award, provide for approved security to be entered by the contractor to protect all such parties.* If a dispute arises as to the balance actually due, the amount admitted shall be paid into court, and a suit brought to recover the disputed part, in the name of the contractor to the use of the parties interested, and any amount recovered shall be distributed as above set forth."

The defendant, however, contends that this section has been declared unconstitutional in Smith's Appeal, 241 Pa. 336, "because it creates a new method for the collection of a debt due for labor and materials in violation of article three, section seven, of the Constitution," where such labor and materials are furnished for a structure for purely public purposes. The plaintiff replies that so much of this section as we have italicised is independent, is not concerned with the collection of a debt already contracted, and, therefore, does not fall within the decision of Smith's Appeal, but remains as a valid statutory enactment. This court has so held in Com., to the use of Koenig, v. Ætna Casualty and Surety Co., 34 Dauph. Co. Reps. 309.

In Rothermel v. Meyerle, 136 Pa. 250, 265, the court said:

"A statute may be void only so far as its provisions are repugnant to the constitution: one provision may be void, and this will not affect other provisions of the statute. If the part which is unconstitutional in its operation is independent of, and readily separable from, that which is constitutional, so that the latter may stand by itself as the reasonable and proper expression of the legislative will, it may be sustained as such; but if the part which is void is vital to the whole, or the other provisions are so dependent upon it, and so connected with it, that it may be presumed the legislature would not have passed one without the other, the whole statute is void . . . [citing cases]. The constitutional and the unconstitutional provisions may even be contained in the same section of the law and yet be perfectly distinct and separable, so that the former may stand though the latter fall: the question is, whether the several provisions are essentially and inseparably connected in substance."

This language is cited with approval in Com. v. Percival, 11 Pa. Superior Ct. 608, 613, and Wood v. Philadelphia, 46 Pa. Superior Ct. 573, 583. To the same effect are Page v. The Williamsport Suspender Co. et al., 191 Pa. 511, 518; Com. v. Moir, 199 Pa. 534, 551; Penna. Mut. Life Ins. Co. v. Cuyler et al., 283 Pa. 422, 425; White on Constitution of Pennsylvania, pages 28, 29.

In Wood v. Philadelphia, supra, it is said (page 582):

"But if, on the other hand, after cutting off the unconstitutional clause or section, there still remains an intelligent piece of legislation, capable of enforcement, in harmony as far as it goes with the apparent legislative intent, it is the plain duty of the courts to permit such portion of the act to stand," though, as said in Rothermel v. Meyerle, supra: "The constitutional and the unconstitutional provisions may even be contained in the same section of the law."

The first part of section six provides that, in lieu of the lien given by the act, a subcontractor for a structure for purely public purposes may give a written notice to the Commonwealth, or any division thereof, being the owner of the structure, whereupon, if the claim of the subcontractor is not paid by the contractor or adequate security given, the owner shall pay the balance actually due into court for distribution. This provision clearly relates to a remedy after a contract has been entered into and the subcontractor's payment is imperiled. Then follows the provision that the Commonwealth shall, and any division or subdivision thereof may, require security to protect "all such parties" as a condition precedent to the award of the contract. It is very apparent that this provision is antecedent to the execution of the contract, a condition precedent to it, while the remedy provided in the first part of the section is a condition which arises subsequent to the doing of the work, a provision for the payment of money into court where the subcontractor has not been paid by the contractor or where adequate security has not been given. One provision is a remedy to save a situation which has already been created,

the other provision looks to the future to prevent any such condition arising. Certainly a provision that the Commonwealth shall require a bond (and any subdivision thereof may require such bond) as a condition precedent to the award of a contract for a public building is independent of a provision which permits a subcontractor who has not been protected by a bond to give notice that he has not been paid so as to require the money to be paid into court for distribution. Section six is a bungled piece of legislation. It should have been in two sections. The first part of it provides for the payment of the whole balance into court. Then comes the provision for the requirement of a bond as a condition precedent to the award of the contract. Then follows the provision, not for the payment of the whole balance into court, but in case of a dispute as to the balance, for the payment into court of the amount admitted to be due. The first and the third parts of the section are co-related. The intermediate part, with reference to the requirement of a bond, has no interdependent connection with the first and the third, and, as said in Rothermel *v.* Meyerle, supra, if independent, it may stand though it "even be contained in the same section of the law." We are not unmindful also that the part which we now hold to be separate and independent is separated from the first part by the semicolon, but punctuation is no part of an act of assembly and should not be used to construe it unless it cannot be understood without such punctuation.

It is contended by the defendant that the provision is dependent and connected with the rest of the section because the bond provided for is "to protect all such parties," and that recourse must be made to the other parts of the section declared unconstitutional in Smith's Appeal, supra, to determine who "such" parties are. While it is undoubtedly true that an unconstitutional act cannot be put into effect, it is, nevertheless, not to be treated as if completely blotted out of the statute book, for, as said in General Assembly *v.* Gratz et al., 139 Pa. 497, 501:

"But, notwithstanding the fact that we must now regard the proviso in the Act of 1874 as unconstitutional, it is lawful, perhaps, to look at it and to read it to see if it sheds any light upon the intention of the legislature in using the language contained in the residue of the act."

The principle is well stated in Keystone State Telephone and Telegraph Co. *v.* Ridley Park Borough, 28 Pa. Superior Ct. 635, 642:

"An unconstitutional statute is not a law, but it is not strictly accurate to say that it is always and under all circumstances to be treated as if it never had been passed. In a well-considered New Jersey case, the court said: 'For many purposes an unconstitutional statute may influence judicial judgment, where, for example, under color of it private or public action has been taken:' Allison *v.* Corker, 67 N. J. L. 596, 52 Atl. 362. An illustration of its effect in such a case will be found in King *v.* Philadelphia Company, 154 Pa. 160. So in Philadelphia *v.* Barber, 160 Pa. 123, it was held, that although to the extent that the provisions of the Act of May 14, 1874, P. L. 158, attempted to make property taxable which was not previously so, it transgressed the rule of the constitution as to the titles to legislative acts, and, therefore, was inoperative, yet it was proper to look at it in determining the intention of the legislature in using the language contained in the residue of the act. See, also, Com. *v.* Potts, 79 Pa. 164; General Assembly *v.* Gratz, 139 Pa. 497."

In Arthur Greenfield, Inc., *v.* Great American Indemnity Co., 16 D. & C. 225, 227, Judge Gordon, in a very well reasoned opinion upon this and other questions involved in the instant case, and in which a bond for the construction of the South Office Building No. 2 in Capitol Park, Harrisburg, was

involved, has come to the conclusion that the provision of section six which we are discussing is constitutional.

We, therefore, conclude that the part of section six of the Act of June 4, 1901, P. L. 431, as amended by the Act of April 22, 1903, P. L. 255, which provides that the Commonwealth shall require a bond as a condition precedent to the award of any contract for public work to protect any subcontractor, is constitutional and in force, and that the bond given by J. H. Bowman, the principal contractor, with the defendant company as surety, is required by this statute. Having come to this conclusion, it follows that under the cases of Greene County *v.* Southern Surety Co., supra, and Portland Sand and Gravel Co. *v.* Globe Indemnity Co., supra, the plaintiff is entitled to recover on this suit brought by the Commonwealth for its use.

In the view which we take of this case, it is not necessary for us to pass upon the questions argued at length in the brief of the Johnson Service Company that the Commonwealth, through the Department of Highways, had the right, in the absence of any statute forbidding it, to legally demand a bond for the faithful performance of the contract and for the protection of laborers and materialmen, or the further question that under the common-law rules applicable to contracts made for the benefit of third parties the plaintiff could enforce this bond.

Now, July 11, 1932, the motion for judgment n. o. v. is hereby overruled and judgment is hereby directed to be entered upon the verdict upon the payment of the jury fee.         From Homer L. Kreider, Harrisburg, Pa.