**[J-78-2014] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

COMMONWEALTH OF PENNSYLVANIA, : No. 98 MAP 2013
:
Appellant : Appeal from the order of the Chester
: County Court of Common Pleas, Criminal
: Division, at No. CP-15-CR-0001260-2013
v. : dated December 17, 2013.
:
:
:
KYLE JOSEPH HOPKINS, :
: ARGUED: September 10, 2014
Appellee :

**DISSENTING OPINION**

**MR. JUSTICE STEVENS** **DECIDED: June 15, 2015**

Our legislature seeks to protect Pennsylvania school children from drug dealers engaging in nefarious activities near neighborhood schools and playgrounds. Without mandatory sentences, my concern is that there will be inconsistent sentencing for drug dealers who operate near school property, thereby frustrating the mandatory sentencing penalty put in place by our duly elected legislators.

Reasonable minds can disagree. I respectfully offer this Dissent in support of the constitutionality of mandatory sentences.

The legislature, with the approval of the governor, created a mandatory sentencing scheme to deter and punish those who sell drugs within 1000 feet of school property. Such a policy is a legislative prerogative.

While the majority decision does not affect the ability of the Commonwealth to arrest and prosecute drug dealers near our neighborhood schools, my concern is that the *sentencing* of those drug dealers may become inconsistent throughout

Pennsylvania because individual trial judges in different counties will not have the mandatory sentence requirement by which to abide.

I respectfully dissent from the learned majority's decision to strike the entirety of 18 Pa.C.S. § 6317. In doing so, the majority finds our mandatory minimum sentencing scheme constitutionally infirm in light of the United States Supreme Court's decision in Alleyne v. United States, -- U.S. -- 133 S. Ct. 2151 (2013). For the reasons that follow, I would reverse and uphold the constitutionality of that statute.

When evaluating the constitutionality of any statutory provision, there is a strong presumption in the Commonwealth that our legislature's enactments do not violate the constitution. Commonwealth v. Williams, 557 Pa. 285, 304, 733 A.2d 593, 603 (1999). A substantial burden of persuasion is, therefore, placed upon an individual challenging the constitutionality of a statute. Id. All doubts must be resolved in favor of sustaining the statute's constitutionality. Hayes v. Erie Ins. Exch., 493 Pa. 150, 155, 425 A.2d 419, 421 (1981). Accordingly, a statutory provision will be found unconstitutional only if "it clearly, palpably and plainly violates the constitution." Id.

When a court with sufficient authority declares a portion of a statute unconstitutional, however, public policy favors severability. Commonwealth v. Mockaitis, 575 Pa. 5, 28, 834 A.2d 488, 502 (2003). It is well settled law that when a portion of a statute is declared unconstitutional, the entirety of the statute is not ineludibly unconstitutional. Rothermel v. Meyerle, 136 Pa. 250, 20 A. 583 (1890). Unconstitutional provisions should, therefore, be severed from the remaining valid provisions whenever possible to uphold the legitimacy of the statute. Id. The legislature has codified this longstanding principle in 1 Pa.C.S. § 1925, which provides:

> The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless

the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925. See Stilp v. Commonwealth, 588 Pa. 539, 905 A.2d 918 (2006). Severance is disfavored only when the invalid provisions are so essentially and inseparably connected with the remaining provisions of the Act that the remainder of the statute is incapable of being executed in accordance with the legislative intent. Commonwealth v. Williams, 574 Pa. 487, 527, 832 A.2d 962, 986 (2003). This leaves this Court with the duty of examining whether the enacting legislature would have enacted the statute had it known the particular provision in question was unconstitutional. Anneberg v. Commonwealth, 562 Pa. 581, 596, 757 A.2d 338, 347 (2000).

Here, the Alleyne decision, in effect, invalidated certain aspects of Section 6317.[1] The Commonwealth, however, aptly notes that Alleyne's effect concerns only the procedural provisions of Section 6317. The United States Supreme Court did not, in any way, affect the statute's substantive provisions, the portions that clearly demonstrate the primary legislative intent in enacting this statute. The Pennsylvania Legislature chose to make the sale of controlled substances within 1,000 feet of a school zone subject to a mandatory minimum sentence in order to shield the children of this Commonwealth from the execrable effects of the drug trade. This legislative policy has been continually recognized by the courts of this Commonwealth.

---

[1] The United States Supreme Court invalidated the portions of our mandatory minimum sentencing statutes that place requisite fact-finding in the hands of the sentencing court for the sentencing court to determine by a preponderance of the evidence.

For example, in Commonwealth v. Marion, 981 A.2d 230, 243 (Pa. Super. 2009), appeal denied, 605 Pa. 697, 981 A.2d 230 (2010), the Superior Court considered the legislative intent in enacting Section 6317, and, in doing so, relied upon its prior holdings in Commonwealth v. Drummond, 775 A.2d 849, 857 (Pa. Super. 2001) (en banc), appeal denied, 567 Pa. 756, 790 A.2d 1013 (2001), and Commonwealth v. Campbell, 758 A.2d 1231, 1233–34 (Pa. Super. 2000), which stated that:

> [T]he General Assembly's goal and purpose [in enacting Section 6317] was to protect the children of our communities from the ravages and evils of the illegal drug trade that pervades our country.  Through the enactment of [S]ection 6317, it attempted to fortify the barrier that segregates the places where our children frequent from the illegal drug scene.  A strict reading of the statute exemplifies the General Assembly's intent….

Drummond, supra at 856-57 (quoting Campbell, supra at 1236-37 (citations and quotation marks omitted)); Commonwealth v. Williams, 955 A.2d 386, 390 (Pa. Super. 2008).  The dim view with which the General Assembly beholds drug trafficking, clearly illustrates its intent to enable the imposition of an appropriate punishment upon those who sell drugs within a school zone, by ensuring that those individuals are separated from society.

With that background in mind, I cannot agree that our legislature would not have enacted Section 6317 if it had known that a jury was required to make the requisite fact-finding, which would trigger a mandatory sentence, rather than a sentencing judge.  In so holding, the majority does not address the statute's manifest intent.  While these procedural aspects were certainly important to the legislature in its enactment of the statute, there is nothing of record to assume that they were so germane that but for their incorporation, the legislature would not have enacted the statute.  Indeed, the driving force behind the particular statute in question was primarily to impose higher sentences upon those who sell drugs in school zones, in order to keep drugs away from our children.  Such is a legitimate, constitutional, legislative decision.

The remaining portion of the statute, along with the constitutional jury requirements articulated in Alleyne, provide more than enough guidance to allow Section 6317 to function in accordance with its primary legislative intent. Excising the now invalid portions of the statute does not render Section 6317 incapable of being enforced. The United States Supreme Court's pronouncement that any fact that increases a mandatory minimum sentence is an element of an enhanced crime, and must be submitted to the jury, coupled with our rules on severability dictate that we should simply submit the requisite fact to the jury to determine beyond a reasonable doubt. This would achieve the manifest goal of our legislature, imposing mandatory minimum sentences upon those who sell drugs in a school zone

By doing so, this Court would not be infringing upon the power of the legislature. Rather, we would be doing precisely what the legislature would have intended, upholding a valid provision of its statute in accordance with its rules of statutory construction. Furthermore, we would be following the constitutional pronouncement as echoed by our United States Supreme Court in the Alleyne decision by allowing the jury to make the specific fact-finding. The majority aptly notes, however, that use of special verdicts in criminal cases has seemingly been disfavored in this Commonwealth. To support this contention, my colleagues rely on this Court's decision in Commonwealth v. Samuel, 599 Pa. 166, 961 A.2d 57 (2008).

In Samuel, we noted that, unlike in civil cases, "where there is specific authority for special verdicts . . . there is no such provision in criminal trials . . .." Id. at 177, 961 A.2d at 64. Further, the Samuel court, quoting Commonwealth v. Campana, 452 Pa. 233, 247 n. 27, 304 A.2d 432, 438 n. 27 (1973) (plurality), vacated on other grounds, 414 U.S. 808, 94 S.Ct. 73 (1973), went on to state that "[t]he proposal of special verdicts in criminal trials to determine what issues the jury actually resolved has been

almost universally condemned." This sentiment has been echoed most recently by this Court in Commonwealth v. Jacobs, 614 Pa. 664, 39 A.3d 977 (2012) (plurality opinion). The value of this authority, however, is suspect, as the quoted language from Samuel is dicta, which relies on, Campana, a plurality opinion.

Furthermore, courts seem to be rejecting an unyielding position regarding the use of special verdicts. For instance, in Jacobs, then Justice Saylor, writing a concurring opinion, which was joined by then Chief Justice Castille, stated:

> Finally, at least in the post-Apprendi landscape, and in matters which are governed by the decision, serious arguments are being made to the effect that the courts ought to reconsider the policy against special jury findings. See, e.g., Meghan A. Ferguson, Balancing Lenity, Rationality and Finality: A Case for Special Verdict Forms in Cases Involving Overlapping Federal Criminal Offenses, 59 DUKE L.J. 1195, 1208 n. 85 (2010) (collecting decisions reflecting the use of special verdict forms in the wake of Apprendi). Therefore I would refrain from continuing to suggest an inflexible position on the subject.

Id. at 681, 39 A.3d at 987. Additionally, federal courts have, for some time, been employing special interrogatories in criminal cases to aid the jury when tasked with determining specific facts. See e.g. United States v. Peña-Lora, 225 F.3d 17, 30 (1st Cir. 2000) (holding that district courts are vested with discretion to employ special verdict forms in criminal cases where a count alleging using and carrying a firearm during a crime of violence lists both a regular firearm and a machinegun); United States v. Sims, 975 F.2d 1225, 1235-36 (6th Cir. 1992) (holding that if the jury returns a guilty verdict, the court may submit special interrogatories to the jury, requiring that it specify which category of weapons it found the defendant was using or carrying.); United States v. Smith, 938 F.2d 69, 70 (7th Cir. 1991) (holding that special verdicts, while generally not favored in criminal cases, were permitted in situations where the defendant's offense turns on factual findings).

More relevant to the instant discussion, however, these processes have been implemented in situations where the jury is tasked with making specific findings, which were formerly classified as sentencing factors, in the post-Apprendi landscape. Federal prosecutors often will charge in their indictments, factors that increase the applicable statutory maximum sentences. Thirtieth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1999-2000, 89 Geo. L.J. 1045, 1049 (2001). Moreover, federal prosecutors have developed jury instructions and verdict forms to be used in submitting those factors to the jury for determination. Id. Because the decision in Alleyne turned on similar legal principles to the Apprendi decision, a similar procedure should be implemented in our present scenario.

At least one Pennsylvania trial court implemented such a procedure under the Alleyne posture, by presenting a special verdict to the jury. See Commonwealth v. Valentine, 101 A.3d 801 (Pa. Super. 2014). While the Superior Court in that case found the procedure was in err, it is precisely what the Superior Court decided was proper in in Commonwealth v. Watley, 81 A.3d 108 (Pa. Super. 2013), appeal denied, -- Pa. --, 95 A.3d 277 (Pa. 2014) regarding Apprendi. In Watley, the Superior Court relying on Commonwealth v. Johnson, 910 A.2d 60 (Pa. Super. 2006), and Commonwealth v. Kearns, 907 A.2d 649 (Pa. Super. 2006), found that specific jury findings relative to the charge for which the defendant is being sentenced are necessary where Apprendi is implicated. As such, the same procedure, as applied in Apprendi situations, is precisely the appropriate remedy in the present scenario, which will uphold the validity of the legislature's enactment. Further, our Criminal Court Rules Committee should address as rapidly as feasible an appropriate amendment.

The majority's decision invalidates the entirety of our mandatory minimum sentencing scheme. I urge our General Assembly to do whatever it takes to reaffirm

through appropriate legislation its foregoing intent, i.e. the disapproval of the illegal drug trade that has for decades ravished all too many communities and families throughout the Commonwealth.

I would find the mandatory sentencing scheme is constitutional.