# Commonwealth *v.* Clark.

*Constitutional law — Discharge of employees — Labor organization — Statute.*

The Act of June 4, 1897, P. L. 116, prohibiting discharge of employees of corporations because of membership in lawful labor organizations is unconstitutional in that it offends article 3, section 7 of the constitution, which provides, "that the general assembly shall not pass any local or special law . . . . regulating labor, trade, mining or manufacturing." Whether the test to be applied to the classification adopted by the legislature in the present instance be necessity or the genuineness and substantial nature of the distinction between employees of corporations and the employees of individuals, firms and limited partnerships with respect to the particular subject of legislation, the act must be declared to be a special law within the true intent and meaning of the constitution.

Argued Jan. 12, 1900. Appeal, No. 39, Jan. T., 1900, by plaintiff, in suit of Commonwealth of Pennsylvania against George Clark, from decree of Q. S. Lackawanna Co., Feb. Sess., 1898, No. 317, quashing indictment. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and MITCHELL, JJ. Affirmed. Opinion by RICE, P. J.

Indictment under Act of June 4, 1897, P. L. 116, to protect employees of corporations in their right to form, join or belong to labor organizations by providing penalties for any interference therewith. Before GUNSTER, J.

It appears from the record that the defendant took a rule to quash the indictment, assigning among other reasons that the act of assembly under which the indictment was drawn was unconstitutional. The court below made absolute the rule to quash the indictment, holding that the act of assembly was in violation of article 3, section 7 of the constitution of Pennsylvania, providing that " the general assembly shall not pass any local or special law . . . . regulating labor, trade, mining or manufacturing." Commonwealth appealed.

*Error assigned* was in holding that the Act of June 4, 1897, P. L. 116, under which the indictment was drawn, was in violation of section 7, article 3 of the state constitution.

*Joseph P. McCullen*, with him *John R. Jones*, district attorney, and *George S. Horn*, for appellant.—If this act is within a reasonable exercise of the police power of the state it does not come into conflict with the fourteenth amendment of the federal constitution, nor is it obnoxious to any other provision of the constitution of the United States : Slaughter House Cases, 83 U. S. 36 ; Powell v. Pennsylvania, 114 Pa. 265 ; s. c. 127 U. S. 678 ; Com. v. Gardner, 133 Pa. 284 ; Com. v. Dunham, 4 Pa. Superior Ct. 74, affirmed in 191 Pa. 73.

The act of the assembly in question does not violate the provisions of section 7, article 3 of the state constitution : Seabolt v. Commissioners, 187 Pa. 318 ; Com. Jones, 4 Pa. Superior Ct. 362 ; Durkin v. Coal Co., 171 Pa. 193.

*J. F. Scragg*, for appellee, filed no paper-book.

OPINION BY RICE, P. J., July 26, 1900:

The 1st section of the Act of June 4, 1897, P. L. 116, provides as follows : " That if any officer, agent or employee of any corporation chartered under the laws of the commonwealth, or any foreign corporation doing business in this commonwealth, (shall coerce or attempt to coerce any employee of such corporation by discharging them or threatening to discharge them from employment of such corporation, because of their connection with any lawful labor organization which such employee may have formed, joined or belonged to,) or if any such officer, agent or employee shall exact from any applicant for employment in such corporation any promise or agreement not to form, join or belong to such lawful labor organization, or not to continue a member of such lawful labor organization, or if any such officer, agent or employee shall in any way prevent or endeavor to prevent any employee from forming, joining or belonging to such lawful labor organization, or shall interfere or attempt to interfere by any other means whatsoever, direct or indirect, with any employee's free and untrammeled connection with such lawful labor organization, he or they shall be guilty of a misdemeanor, and on conviction thereof shall be liable to a fine of not more than $2,000 or less than $1,000 and imprisonment for a term not exceeding one year, or either or both, in the discretion of the court."

The particular offense with which the defendant was charged in the indictment is that defined in the first clause of the section, which, for convenience, we have put in parenthesis. The things condemned are the coercion and the attempted coercion of an employee ; but as the act declares what acts shall constitute coercion and attempted coercion, it is plain to be seen that it forbids under penalty the discharge of an employee because of his connection with any lawful labor organization. The fact that by the terms of the contract of employment, either party is at liberty to terminate the relation at any time and for any cause that may seem to him good, and even without cause except his mere pleasure, cannot affect the question of the defendant's guilt, if it be shown to the satisfaction of a jury by direct or circumstantial evidence that it was because of his connection with a lawful labor organization that the employee was discharged or threatened with discharge. Even if he were em-

ployed under the distinct understanding and agreement that he would not form, join or continue to be a member of such organization, and violated his agreement, he would be protected from discharge for that cause, because the exaction of such agreement as a condition to his employment is made unlawful in a subsequent part of the section, and, therefore, the agreement would be a nullity. The principle involved in such legislation, it must be conceded by its most ardent defenders, is very far-reaching. If it be valid legislation the principle would extend to and sustain a law making it a misdemeanor to discharge an employee because of his membership in any organization, whether social, political, religious, fraternal or whatever it might be, provided only that it was lawful, or because of his connection with any lawful enterprise, or because of any lawful course of living that the legislature might deem not inconsistent with the discharge of his duties to his employer, and that notwithstanding an express agreement between the employer and the employee that the former should have that right. And if it may restrict the right of the employer to refuse to continue the relation for such cause, no contract, and no law against conspiracy being violated thereby, it is difficult to see why it may not make it a misdemeanor for him to refuse to employ men because, and for that cause only, they are members of such organizations. So also, if the act under consideration is a valid exercise of the police power of the state, upon the same principle the legislature could enact a law making it a misdemeanor for the employee to coerce or attempt to coerce his employer by quitting work because his employer refused to employ or insisted upon discharging men not to the liking of the employer, even though by the terms of the contract either party was at liberty to end the employment at any time. For it is self-evident that if the legislature may restrict the right of one party to the contract to terminate at any time the relation thus established, it may in like manner restrict the right of the other party, if it so wills. These and other illustrations that might be given, show that a greater principle is involved than the power of the legislature to enact suitable laws to protect employees in the full enjoyment of their undoubted right to form, join or belong to associations organized for their mutual aid, benefit and protection. When a case arises where it shall be

necessary to determine the question, it will be well worthy the most serious and dispassioned consideration, whether a law forbidding the employer to prescribe the terms upon which he will take or retain another in his employment, or the employee to dictate the terms upon which he will enter or remain in the employment of another, is not such an unwarranted interference with freedom of contract as to be an infringement of the liberty guaranteed to one as well as the other by the constitution. But it is not absolutely necessary in the present case to discuss the extent to which the legislature in the exercise of the police power may restrain the natural liberty of the citizen in this regard. For, although it would seem from the record that these questions were raised by the defendant's counsel in the court below, and although they were fully and ably argued by the counsel for the commonwealth in this court, yet, as we have not had the benefit of a presentation of an argument on the other side, we feel justified in leaving them with this bare suggestion of their importance, and a reference to some of the general principles of construction to be had in view in the determination of them and like questions. These were very clearly stated in the opinion of Justice BRADLEY in Boyd v. U. S., 116 U. S. 616, 635; 29 L. ed. 746, 752. "Illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obtained by adhering to the rule that constitutional provisions for the security of persons and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance."

The court below, whilst commenting upon the questions above suggested, quashed the indictment upon the distinct ground that the clause of the act under consideration is in violation of article 3, section 7 of our state constitution, which provides, that " the general assembly shall not pass any local or special law . . . . regulating labor, trade, mining or manufacturing."

First, is this a law regulating labor, trade, mining or manufacturing?

It would seem clear that a law which provides that one

employed to labor shall not be discharged by his employer for a cause which they deemed and agreed to be sufficient when the contract of employment was made, or that he shall not be discharged for the same cause, when by the terms of the contract of employment the employer has the right to discharge him, and he has a right to quit work, at his mere pleasure, or that a laborer shall not quit work because his employer has formed or joined an association of employers lawfully organized for their mutual aid, benefit and protection, is a law regulating labor. And such a law, when operative to restrict the natural rights of those engaged in trade, mining or manufacturing with respect to the conduct of such business (which includes, of course, the selection and discharge of employees), may also be regarded as a law regulating trade, mining or manufacturing, as the case may be.

Second, is this a special law?

The only employers affected by the act are corporations, and the only employees affected are the employees of corporations. It is unquestionably class legislation, but class legislation is not necessarily special legislation within the meaning of the prohibitory provisions of our state constitution. Not only may there be separate legislation for or concerning a class into which individuals and objects are naturally collected, but it is also well settled, that the legislature is not absolutely prohibited to determine and declare the classes to which the objects of legislation belong, and then legislate for or concerning each of those classes separately and differently. The difficulty is in determining when the constitutional limitations upon this power have been exceeded; for, although it is primarily a legislative question, it is the plain duty of the courts to interfere where, no matter what the pretext, the constitutional prohibition of local and special legislation has been violated.

In Ayars's Appeal, 122 Pa. 266, 281, Chief Justice STERRETT declared that the underlying principle of all the cases is, " that classification, with the view of legislation for either class separately, is essentially unconstitutional, unless a necessity therefor exists, a necessity springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others.

Laws enacted in pursuance of such classification and for such purposes, are, properly speaking, neither local nor special. They are general laws, because they apply alike to all that are similarly situated as to their peculiar necessities."

In Sugar Notch Borough, 192 Pa. 349, Mr. Justice MITCHELL said: " It is the settled law since Wheeler v. Philadelphia, 77 Pa. 338, that classification based on genuine and substantial distinctions is within the constitutional power of the legislature, and an act which applies to all the members of the class is general and not special."

In Seabolt v. Commissioners, 187 Pa. 318, it was said that " classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition."

In the late cases of Com. v. Gilligan, 195 Pa. 504, and Clark's Estate, 195 Pa. 520, it is declared: " It may, therefore, be taken as settled law that in cases of this character the courts will look beyond the mere form of the act, and examine its true intent and effect, in the light of the purpose of the constitutional restrictions."

It is unnecessary to cite other cases. With these authoritative rulings to guide us, it ought not to be difficult to determine whether or not this is a special law. As its title indicates it is an act to protect certain employees in their right to form, join or belong to labor organizations, and in providing protection for them it restricts the rights of their employers with respect to the selection and discharge of employees. To be more explicit, it extends protection to the employees of corporations in their right to form or join labor organizations, whilst denying the same protection to the employees of individuals, firms and limited partnerships ; it deprives corporations of the right to discharge employees for a certain cause, even though this right be expressly reserved in the contract of employment; whilst leaving individuals, firms and limited partnerships free to discharge their employees for the same cause or at will, provided no contract or law against conspiracy be violated. As has been well said arbitrary selection can never be justified by calling it classification. " While

good faith and a knowledge of existing conditions on the part of the legislature is to be presumed, yet to carry that presumption to the extent of always holding that there must be some undisclosed and unknown reason for subjecting certain individuals or corporations to hostile and discriminating legislation is to make the protecting clauses of the fourteenth amendment a mere rope of sand, in no way restraining state action:" Justice BREWER in Gulf, etc., R. Co. v. Ellis, 165 U. S. 150; 41 L. ed. 666. This is equally true whether classification for purposes of legislation be viewed with respect to the provisions of our state constitution prohibiting special legislation, or with respect to the provisions of the federal constitution. If this were not so, the courts would be compelled to declare that an act like that under consideration would be valid although restricted to natural persons or any class of natural persons, as for example coal operators, or builders, or plumbers, or shoe-makers or bakers (and so on indefinitely) and their employees. Surely no one would contend that such arbitrary selection of persons for the purposes of legislation upon a subject with respect to which these persons differ in no particular from other persons would be justified upon the principle that if a law deals alike with all of a certain class it is a general law. It becomes equally clear, when the question is carefully considered in the light of principle as well as authority, that the arbitrary selection of corporations and their employees for the purpose of this legislation cannot be sustained upon that principle. If it be said that corporations are not within the protection of the fourteenth amendment of the federal constitution, that legislation affecting them is permissible which would not be permissible as to natural persons, and, therefore, the classification upon which this act rests was justifiable, it seems sufficient to reply that the argument is based on a false premise. After citing a large number of authorities in support of the proposition that corporations are persons within the provisions of the fourteenth amendment, Justice BREWER said: " The rights and securities guaranteed to persons by that instrument cannot be disregarded in respect to these artificial entities called corporations any more than they can be in respect to the individuals who are the equitable owners of the property belonging to such corporations. A

state has no more power to deny to corporations the equal protection of the law than it has to individual citizens:" Gulf, etc., R. Co. v. Ellis, supra. If it be said that legislation for the protection of employees as a class against coercion or unfair and unconscionable dealings on the part of employers as a class is a valid exercise of the police power of the state, the plain answer is that, even if the soundness of this general principle be conceded, it does not apply here, because the act under consideration does not apply alike to all the members of the two classes, namely employers and employees.

Whether the test to be applied to the classification adopted by the legislature in the present instance be necessity—using that term in the sense of great or urgent public convenience—or be the genuineness and substantial nature of the distinctions between employees of corporations and the employees of individuals, firms and limited partnerships with respect to the particular subject of legislation, we are all of opinion that this must be declared to be a special law within the true intent and meaning of the constitution.

Judgment affirmed.