# Wood *v.* Philadelphia, Appellant.

*Constitutional law—Municipalities—Classification of cities—Public officers—Civil service requirements—Soldiers and children of soldiers— Act of March 5, 1906, P. L. 83.*

The Act of March 5, 1906, P. L. 83, entitled, "An Act to regulate and improve the civil service of the cities of the first class in the Commonwealth of Pennsylvania, making violations of its provisions to be a misdemeanor, and providing penalties for the violation thereof," and providing that "appointments to and promotions in the civil service of cities of the first class shall be made only according to qualifications and fitness, to be ascertained by examinations, etc.," is unconstitutional as special legislation, violative of art. III, sec. 7, of the constitution, in so far as it provides in sec. 1, "that the provisions of this act shall not apply to any soldier, sailor or marine honorably discharged from service in any war for the United States government, nor to their widows or children."

Argued Oct. 10, 1910. Appeal, No. 17, Oct. T., 1910, by defendant, from decree of C. P. No. 5, Phila. Co., Dec. Term, 1907, No. 812, on bill in equity in case of Stuart Wood v. City of Philadelphia, Henry Clay, director of public safety, John M. Walton, city controller, and Stephen J. Mulholland. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Bill in equity for an injunction to restrain the further employment of Stephen J. Mulholland in the city's employ as a hoseman.

STAAKE, J., stated the facts to be as follows:

The complainant is a citizen and taxpayer of the city of Philadelphia.

The defendant, Henry Clay, is the director of the department of public safety of the city of Philadelphia. The defendant, John M. Walton, is the controller of the county of Philadelphia, and as such is charged with the duty of signing all warrants for salaries to be paid to employees of the city of Philadelphia. The defendant, Stephen J. Mul-

holland, is an employee of the city in the department of public safety whose appointment was alleged to be illegal and void for reasons averred in the said bill.

On December 17, 1906, Robert J. McKenty, then director of the department of public safety in the city of Philadelphia, notified, in writing, the civil service commission of the city that he had selected Stephen J. Mulholland, residing at No. 422 Queen street, in the city, for the appointment to the position of hoseman in the bureau of fire in the department of public safety at a salary of $900 per annum, the appointment dating from December 12, 1906.

Stephen J. Mulholland was a son of William J. Mulholland, an honorably discharged soldier who had served in the Spanish-American and Philippine Wars.

The position of hoseman, in the bureau of fire in the department of public safety, in the city of Philadelphia, is a position in the competitive class of the classified civil service by virtue of the provisions of: "An Act to regulate and improve the civil service of the cities of the first class in the Commonwealth of Pennsylvania" approved March 5, 1906, P. L. 83.

Appointments to positions in the competitive class of the classified civil service of the said city can be lawfully made only by selection from among four persons certified to the appointing officer by the civil service commission, such persons being those standing highest on an eligible list secured as a result of a competitive examination held in accordance with the provisions of the act.

The civil service commission had, prior to December 12, 1906, held a competitive examination of applicants for appointment to the position of hoseman in the bureau of fire.

In consequence of this examination the commission had, at the time of the appointment of Mulholland, an eligible list of candidates who had passed examination for the position of hoseman in the bureau of fire, but the said Mulholland was not on the eligible list, nor had he at any time

passed a competitive examination for the position of hose-man.

The said Mulholland did, on or about December 17, 1906, assume the position of hoseman and ever since that date, acting under the authority conferred upon him by his appointment, he has night and day served the city of Philadelphia as a hoseman connected with Engine Company No. 22, and Engine Company No. 3, being now temporarily detailed to Engine No. 11. During this employment he has performed all the duties and rendered all the services required of or incident in any way to the position, and has received payment at the rate of $900 per year from the city of Philadelphia. He has now had over one year's experience and practice in fighting fire, and it is admitted by the complainant that he is fully qualified to fill the position of hoseman.

Henry Clay became director of the department of public safety of the city of Philadelphia in place of Robert J. McKenty, and has retained Mulholland in the employ of the bureau of fire under his original appointment.

The appointment of Mulholland was made under the authority of a certain proviso to sec. 1 of the said act of March 5, 1906, reading as follows:

"Provided, that the provisions of this act shall not apply to any soldier, sailor or marine honorably discharged from service in any war for the United States government, nor to their widows or children."

The appointment of the said Mulholland was not made under the provisions of art. XII, sec. 3, of the Act of June 1, 1885, P. L. 37, entitled "An Act to provide for the better government of cities of the first class in this Commonwealth."

The complainant averred that he had no adequate remedy at law and prays that a permanent injunction issue against the city of Philadelphia and Henry Clay, director of the department of public safety of the city, enjoining and restraining them from retaining the said Stephen J. Mulholland, in the employ of the said bureau of fire as

hoseman, or in any other capacity, under his said alleged illegal and void appointment, and against John M. Walton, controller of the county of Philadelphia, enjoining and restraining him from signing any warrant in favor of the said Stephen J. Mulholland.

All of the defendants denied that the appointment of the said Stephen J. Mulholland was illegal.

The city of Philadelphia and Henry Clay, director of the department of public safety, averred that Mulholland is a steady, honest, sober and capable man; that he has served as a hoseman as already stated herein; that he has shown himself to be a man of great ability and efficiency as a fire fighter; that the purpose of the act of 1906, as stated in its title and intended, is to improve the civil service; that these proceedings, if successful, will not be calculated to improve the service of the bureau of fire of the said city, but will, on the contrary, tend to injure it greatly by discharging from said service a man of experience, efficiency and competence in the performance of the duties of his appointment; that the civil service of the city of Philadelphia and the service of the bureau of fire will be improved in a much more satisfactory way by the retention of a competent man, who has had a year's experience in the performance of his duties, rather than by the substitution for him of an inexperienced man, whose only qualification for the work is that he has been able to pass an examination required of him by the civil service board.

The court entered a decree in accordance with the prayers of the bill.

*Error assigned* was the decree of the court.

*Thomas D. Finletter*, with him *Joseph Gilfillan, George S. Graham* and *J. Howard Gendell*, city solicitor, for appellants.—Laws relating to subjects, which demand legislation varying with the size of the cities, may be valid, if applied to a reasonable and not too refined artificial class, selected by a substantial uniformity of population: Pro-

vided, they have reference to the peculiarities of the class: Kilgore v. Magee, 85 Pa. 401; Com. v. Moir, 199 Pa. 534; Ayars' App., 122 Pa. 266.

Preference of appointments of soldiers has been sustained in many states: Shaw v. City Council of Marshalltown, 104 N. W. Repr. 1121; Opinion of Justices, 166 Mass. 589 (44 N. E. Repr. 625); Goodrich v. Mitchell, 64 L. R. A. 945; People v. Wright, 150 N. Y. 444 (44 N. E. Repr. 1036); People v. Tobey, 153 N. Y. 381 (47 N. E. Repr. 800); Keim v. U. S., 177 U. S. 290 (20 Sup. Ct. Repr 574).

*Charles C. Binney,* with him *Robert D. Jenks* and *Vivian Frank Gable,* for appellee.—The proviso to sec. 1 of the civil service act of 1906 is unconstitutional, because it undertakes to grant special privileges and immunities to individuals: Philadelphia v. Haddington M. E. Church, 115 Pa. 291; Weinman v. Pass. Ry. Co., 118 Pa. 192; Com. v. Clark, 14 Pa. Superior Ct. 435; Ayars' App., 122 Pa. 266; In re Keymer, 148 N. Y. 219 (42 N. E. Repr. 667).

OPINION BY HEAD, J., April 22, 1911:

By the act of March 5, 1906, P. L. 83, the legislature undertook "to regulate and improve the civil service" of cities of the first class. The act is elaborate and comprehensive, containing twenty-eight sections; expressly repeals previous inconsistent acts, and carries the legislative declaration that "it is intended by this act to furnish a complete and exclusive system for the appointment, removal, etc.," of all officers, clerks, laborers and other employees in the civil service of cities of the first class. The scope of the act fairly appears in the general enacting clause of the first section, to wit: "Appointments to and promotions in, the civil service of cities of the first class shall be made only according to qualifications and fitness, to be ascertained by examinations, etc."

The tendency of our people to gather themselves into

huge urban communities is too marked to be ignored. The conditions under which human beings thus crowded into a small area must frequently, if not necessarily live and work, produce from time to time appalling tragedies that testify to the supreme importance of the functions to be discharged by our great municipalities. The general assembly then, in fixing the qualifications of those upon whose shoulders would necessarily fall the performance of these high obligations, was legislating on a subject of vital concern to the people.

As we have already observed, the language of the enacting clause of the first section is broad and sweeping, indicative of the legislative intent that all applicants for appointment to the civil service shall stand upon the same plane, be invested with the same privileges and rights, and compelled to bear the same burdens. This intent again appears in sec. 23 which provides that "no discrimination shall be exercised, threatened or promised by any person in the civil service against, or in favor of, an applicant, . . . . because of his political or religious opinions or affiliations," and it is finally manifested in the declaration with which the statute concludes, already quoted. Apart then from the proviso to the first section, to which we must now turn our attention, we have a statute that satisfies every accepted test by which we distinguish general from special legislation.

The proviso to sec. 1 is in the following language: "Provided that the provisions of this act shall not apply to any soldier, sailor or marine honorably discharged from service in any war for the United States government, nor to their widows or children." With this proviso injected into the section, the entire aspect of the statute is changed. For it is immediately apparent that, with this proviso in operation, the statute has undertaken to classify applicants for the civil service and to set apart a class, indefinite in numbers, whose appointment to and promotion in the civil service of such cities is to be regulated by other laws than those applying to applicants

in the general and remaining class. As to this special class, it is to be observed that none of the provisions of the act of 1906 are in force. That class is to be dealt with as if the act referred to had never been passed. We regard it as too clear for argument, therefore, that the effect of the proviso quoted is to bring about class legislation.

Class legislation is special legislation, and obnoxious to the provisions of the constitution forbidding such legislation unless the classification adopted by the legislature possesses those attributes and is marked by those characteristics which our courts have frequently declared can alone justify such legislation. The principle by which the propriety of an attempted classification is to be determined was clearly stated in Ayars' Appeal, 122 Pa. 266, in the following language: "The underlying principle of all the cases is that classification, with the view of legislating for either class separately, is essentially unconstitutional, unless a necessity therefor exists,—a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to others." When we apply this standard to the proviso creating a class of individuals who are not to be bound by the general law affecting all other applicants outside of the exempted class, and who, in seeking public office, are to be governed by laws only applicable to themselves, we are at a loss to discover any substantial ground upon which such classification may rest.

It has no relation whatever to the subject-matter of the legislation. Satisfactory qualifications for the discharge of the duties which fall upon the officials of a city can no more be predicated of the children of soldiers and sailors than they could be of the offspring of doctors and lawyers. The attempted classification here sought to be made rests upon no natural reason and certainly upon no necessity, because it is impossible to see any reason why, with re-

lation to the public service of a great city, the children of soldiers and sailors should be treated differently from other applicants whose parents, however useful and honorable their lives, had not been fortunate enough to have served the government in time of war. We cannot view such a classification as other than purely artificial and arbitrary, and, as was well said by President Judge RICE in Com. v. Clark, 14 Pa. Superior Ct. 435: "Arbitrary selection can never be justified by calling it classification." If the legislature may, within its constitutional limitations, create a class restricted to the children of soldiers and sailors seeking appointments in the public service and legislate in one way for that class, it may with like propriety subdivide all other applicants into as many classes as it may choose according to the avocation, color, religion or politics of their parents and then provide separate laws for the control of each class. This would of course be what was once styled by an eminent jurist "classification run mad." But it is not apparent that the end could be short of that if the classification now being considered could be upheld.

So in Com. v. Clark, 14 Pa. Superior Ct. 435, the Act of June 4, 1897, P. L. 116, which undertook to place in one class the employees of corporations only—as distinguished from those of individuals, partnerships, etc.—and then legislate separately for that class, was held to be unconstitutional. After pointing out that if such classification could be sustained the courts would be obliged to regard as valid similar acts, although restricted to "any class of natural persons, as for example, coal operators, builders, plumbers, etc.," the opinion goes on thus: "Surely no one would contend that such arbitrary selection of persons for the purposes of legislation, upon a subject with respect to which these persons differ in no particular from other persons, would be justified upon the principle that if a law deals alike with all of a certain class it is a general law."

By the Act of June 16, 1891, P. L. 313, the legislature prohibited any person from engaging in the business of compounding or dispensing medicines or selling drugs,

etc., without having obtained a certificate of competency such as was provided for in the act. It then undertook to except or exempt from the operation of the act, the widow or legal representatives of a deceased person who had managed such a business and been a registered pharmacist. In Com. v. Zacharias, 181 Pa. 126, the constitutionality of such an exception was discussed by the Supreme Court, although it was not the exact point in issue and the case was disposed of on other grounds. The language of Mr. Justice WILLIAMS on that subject, however, is so pertinent and forceful that it may well be quoted here: "The exception makes a discrimination between equally unqualified parties, giving to one exemption from the operation of a rule enforced against the other. There is no more reason why the administrator or widow of a pharmacist should be permitted to manage a business of which he or she knows nothing than why any other administrator or widow should be allowed to do so. . . . It is a discrimination made between those who are equal under the law. It is an arbitrary gift to one, and an arbitrary denial to another, which cannot be upheld."

Our cases defining the constitutional limitations of the power of the legislature to classify subjects for legislative purposes are numerous and familiar to the profession. That the reasoning upon which they rest has led the courts of other states to like conclusions will sufficiently appear from the following excerpts. In State v. Shedroi, 75 Vt. 277, the supreme court of that state said: "By the law in question the legislature has made a classification by placing persons resident of the state who served as soldiers in the civil war and were honorably discharged in one class, and all other citizens together in another class. . . . Upon what basis does the attempted classification rest? There is no basis upon which it can rest except that persons in the one class served as soldiers in the civil war and were honorably discharged, and those of the other class did not so serve or were not honorably

discharged. This classification is dependent solely on a condition of things long since past and not on a present situation or condition, nor on any substantial distinction having reference to the subject-matter of the law enacted." In State v. Whitcom, 122 Wis. 110, Dodge, J., speaking of a legislative attempt to create an ex-soldier class, said: "No one denies that, to those who have thus sacrificed their comfort and often their health and vigor to the public, there is a legitimate and proper feeling of gratitude from the entire community which each member thereof should appreciate; but this does not answer the question whether by a constitution enacted a half century and more ago there was conferred upon agents of the public— the legislature—authority to coin this gratitude into all forms of favor, whether by direct donation or by exemption from the duties and burdens resting upon other citizens, after these men had returned from their military service and again become as they were before, part of the mass of citizenship."

We are obliged, therefore, to conclude that the proviso to sec. 1 was an attempt at legislation beyond the constitutional powers of the general assembly, and therefore inoperative and void.

Must we therefore strike down the entire act? The power of the courts to declare invalid an act of the legislature is a necessary but delicate one, and is and ought to be exercised only when, and so far as, obedience to the fundamental law requires. It is doubtless true that when the excision of the invalid portion of a statute leaves but a mutilated remnant that cannot be enforced, the entire statute is of necessity gone, or even where what is left might be capable of enforcement, and yet this would result in producing a condition at variance with the whole scope and purpose of the statute as enacted, again the destruction of the whole would follow.

But if, on the other hand, after cutting off the unconstitutional clause or section there still remains an intelligent piece of legislation, capable of enforcement, in har-

mony as far as it goes with the apparent legislative intent, it is the plain duty of the courts to permit such portion of the act to stand. The familiar principle is thus stated in Rothermel v. Meyerle, 136 Pa. 250, one of the many cases on the subject: "A statute may be void only so far as its provisions are repugnant to the constitution: one provision may be void, and this will not affect other provisions of the statute. If the part which is unconstitutional in its operation, is independent of, and readily separable from that which is constitutional, so that the latter may stand by itself, as the reasonable and proper expression of the legislative will, it may be sustained as such." It seems to us that this language fairly and accurately describes the situation now before us. If we seek to draw the general intent of the legislature, in enacting the statute we have been considering, either from the title to the act, from its general enacting clauses, or from its final section, in which the legislature undertook to declare its own intent, we cannot reach any other conclusion than that what remains, after striking out the unconstitutional proviso, fairly reflects the general legislative purpose and retains all necessary vigor for the accomplishment of that purpose.

Viewing the statute, as we do, as a highly important piece of legislation, we would be doing an unwarranted act if we were to attempt to expunge it from the statute books because the mandate of the constitution has forced us to lop off the objectionable proviso. In such a case the court may not presume that the legislature would have declined to enact the law without the proviso. The most that can be certainly said is that the legislature has expressed a willingness to exempt from the burdens placed upon all other applicants, the special class described in the language of the proviso. But the latter is, in substance, so much a thing apart from the structure of the statute itself, and the latter remains so complete and purposeful without it, that we are all of opinion that, notwithstanding the unconstitutionality of the proviso,

the statute remains effective and adequate to carry out
the plainly expressed legislative intent; on both branches
of the case, therefore, that we have discussed, we are of
opinion that the learned court below was right in entering
the decree appealed from.

Decree affirmed.