## Laplacca v. Philadelphia Rapid Transit Co., Appellant.

*Constitutional law—Special legislation—Creation of liens—Attorney's lien on client's cause of action—Act of May 6, 1915, P. L. 261—Constitution of Pennsylvania, Art. III, Sec. 7.*

The Act of May 6, 1915, P. L. 261, which gives to an attorney of record "from the commencement of any action or proceeding either at law, in equity or otherwise," a lien for his compensation upon his client's cause of action, and which authorizes the court in which the cause is brought "to determine and enforce the lien," is unconstitutional, as violating Article III, Section 7 of the Constitution which declares that "the general assembly shall not pass any local or special law authorizing the creation, extension, or impairing of liens......or providing or changing methods for the collection of debts.

Such an act involves an artificial and arbitrary classification of creditors in favor of attorneys-at-law who are attorneys of record in law suits or proceedings.

Argued Dec. 15, 1916.    Appeal, No. 299, Oct. T., 1916, by defendant, from order of Municipal Court, Philadel-

phia Co., Aug. T., 1915, No. 302, directing payment of an attorney's fee in case of Petro Laplacca and Catalda Laplacca, his wife, Abraham Wernick, Intervening Attorney, v. Philadelphia Rapid Transit Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.    Reversed.

Petition by Abraham Wernick to compel payment to him of an attorney's fee.

From the petition it appeared that Petro Laplacca and Catalda Laplacca, his wife, had brought suit against the Philadelphia Rapid Transit Company to recover damages for the death of an infant son.    Wernick was the attorney of record in the case.    The case was put at issue, and ordered on the trial list.    The petition further averred as follows:

"2. That your petitioner is informed that during the month of September, 1915, without the knowledge or consent of your petitioner, a settlement of said case was made directly between the parties, by the payment by the defendant directly to the plaintiffs, of the sum of $200.    The said plaintiffs have held no communication of any kind with your petitioner since consummating said settlement, and they have no intention to pay and have not paid to your petitioner anything whatever and they have declined to call upon your petitioner, although requested to do so; and your petitioner could gain nothing by taking action against them.

"3. That your petitioner made a written contract with his said clients, the plaintiffs in said case, for the payment of a fee for your petitioner's services in said case of thirty-five per cent. of any amount recovered by suit or settlement.

"4. That your petitioner is entitled by law under the Act of Assembly of May 6, 1915, to a lien for service in said case and for the enforcement of said lien for same."

The court in an opinion by WHEELER, J., entered an order directing the payment of a fee of $35 to petitioner.

Assignment of Error—Opinion of the Court. [68 Pa. Superior Ct.

*Error assigned* was the order of the court.

*Russell Duane,* with him *Harry S. Ambler, Jr.,* for appellant.—A claim of an attorney-at-law for compensation for professional services is one arising out of contract: Balsbaugh v. Frazer, 19 Pa. 95; McKelvy's App., 108 Pa. 615; Aber's Petition, 18 Pa. Superior Ct. 110; Seybert v. Salem Twp., 22 Pa. Superior Ct. 459.

The Act of 1915 is unconstitutional as special legislation in favor of a particular class of creditors: Sumption v. Rogers, 53 Pa. Superior Ct. 109; Vulcanite Portland Cement Co. v. Allison, 220 Pa. 382; Sax v. School Dist., 237 Pa. 68; Malone v. Hosfeld, 53 Pa. Superior Ct. 134; Page v. Carr, 232 Pa. 371; Sterling Bronze Co. v. Syria Imp. Assn., 226 Pa. 475; Ayar's App., 122 Pa. 266; Safe Dep. & Trust Co. v. Fricke, 152 Pa. 231; Van Loon v. Eagle, 171 Pa. 157.

*B. D. Oliensis* and *Thomas James Meagher,* with them *Abraham Wernick,* for appellee.—The Act of 1915 is constitutional: Strine v. Foltz, 113 Pa. 349; Hoekstra v. Chambers, Etc., Church, 51 Pa. Superior Ct. 405; Wirsing v. Penna. Hotel, Etc., Co., 226 Pa. 234; Wheeler v. Philadelphia, 77 Pa. 338; Com. v. Fisher, 213 Pa. 48; Seabolt v. Commissioners, 187 Pa. 318; Garrett v. Turner, 235 Pa. 383; Com. v. Pflaum, 236 Pa. 294; Com. v. Gilligan, 195 Pa. 504; W. Va. P. & P. Co. v. Pub. Service Com., 61 Pa. Superior Ct. 555.

OPINION BY HEAD, J., October 15, 1917:

The determination of the people of this Commonwealth to live under a written Constitution has been persistent and continuous since our beginning, yet we have just as firmly adhered to the idea of a popular representative form of government. To keep these two forces in their proper relations, every Constitution the people of the State have adopted has contained some limitation on

the power of the people's representatives, composing the
General Assembly, in the enactment of legislation.

Our present Constitution in Article III, Section 7 de-
clares: "The General Assembly shall not pass any local
or special law authorizing the creation, extension or im-
pairing of liens,......or providing or changing methods
for the collection of debts." The question we have to
determine is whether or not the legislature, in the enact-
ment of the Act of May 6, 1915, P. L. 261, has over-
stepped the constitutional barrier raised by the article
and section we have quoted.

The decisions of our own courts of last resort, constru-
ing that particular article and section, are legion. If, in
their light, we cannot solve the question before us, but
little aid could be expected from a laborious study of the
constitutions of other states and the decisions of their
courts expounding them. Nor could any useful pur-
pose be subserved by reiterating what has so often been
said that the very language adopted by the courts has
become familiar to the profession. Suffice it to say that
an examination of our own cases of Wood v. Philadel-
phia, 46 Pa. Superior Ct. 573, and Sumption v. Rogers,
53 Ibid 109, and the many precedents therein examined
and applied will readily reveal the authoritative grounds
on which we rest our present conclusion.

Prior to the passage of the statute in question there
was no room for doubt as to the relation between a law-
yer who had performed service and a client who had
received the benefit thereof but had neglected or refused
to pay reasonable compensation therefor. The relation
was simply that of debtor and creditor. As long ago
therefore as Balsbaugh v. Frazer, 19 Pa. 95, it was held
that in an action by a client to recover from his counsel
money belonging to the former that had come into the
hands of the latter, the counsel might justly defalk the
amount due and owing to him as compensation for the
service he had rendered. To quote the language of Mr.
Chief Justice BLACK, "A claim for such services, like

any other which arises out of a bargain or contract, express or implied, may be defalked against an adverse demand and the party whose claim is the largest is entitled to the judgment." A man who owed to his lawyer a reasonable fee for services performed might also owe compensation to his family physician who had assisted his wife in her hour of travail, and to whose professional skill and knowledge he might be indebted for the preservation of the lives of both mother and child. He might owe to those who had provided for him and his family food and raiment, without which they could not survive, and yet all of these obligations, no matter what their relative rank might be in the forum of conscience and morals, were in the eye of the law but debts. All of these people were creditors standing on the same footing and each one could avail himself only of the remedies generally provided by the law to enable a creditor to collect his debt.

Now the Act of 1915, already referred to, provides, inter alia, "That from the commencement of any action or proceeding, either at law, in equity, or otherwise howsoever, or the filing of any counterclaim or any pleading, the attorney who appears of record for a party therein shall have a lien for his compensation for his services upon his client's cause of action, claim or counterclaim, which shall attach to any award, order, report, decision, compromise, settlement, verdict or judgment in the client's favor, and the proceeds thereof in whosesoever hands they may come, &c." The second section provides, "The court in which the cause is brought shall, on the petition of the client or of the attorney, have jurisdiction to determine and enforce the lien, &c." It needs nothing more than a reading of the language of the statute to make it plain the legislature has undertaken to create a lien which did not theretofore exist and has provided a remedy for the collection of a debt theretofore unknown to the law. The statute therefore comes within the express prohibition of the Constitution. How is it sought

to be upheld? The attempt to support it rests upon what we regard as a wholly unwarranted amplification or extension of the rule of classification. In the first place, out of every kind of ordinary indebtedness existing before its passage, the act selects one particular kind of debts, to wit, the debt owed by a client to his attorney, and seeks to make the creditor in such cases the object of its fostering care. The lien and remedy to enforce it provided for in this act extend to none other of the creditors herein previously referred to. It is impossible for us to see any such natural or necessary distinction between a creditor lawyer and a creditor physician or merchant as would furnish any rational ground for the application of the doctrine of classification. It is to be remembered the rule of classification, as we now understand it, is not a rule provided by the Constitution itself. In its inception it arose ex necessitate because without it, it would have been impossible to work out and apply the great and useful principles of the new Constitution. It must rest therefore for its support on the principle expressed in the maxim "ut res magis valeat quam pereat."

We therefore quote once more the forcible language of Mr. Justice STERRETT in Ayars' App., 122 Pa. 266: "The underlying principle of all of the cases is that classification, with the view of legislating for either class separately, is essentially unconstitutional, unless a necessity therefor exists—a necessity springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others." Fighting, as we must, under that banner, we can find no way to follow its guidance in upholding the statute on which the judgment below must rest. So in Commonwealth v. Clark, 14 Pa. Superior Ct. 435, we had a statute in which the legislature undertook to place in one class the employees of corporations only as distinguished from those of individuals, partnerships, etc., and then legislate separately for

that class.   In holding the statute to be unconstitutional,
President Judge RICE, speaking for this court, pointed
out that if such classification could be sustained, the
courts would be obliged to regard as valid similar acts
although restricted to "any class of natural persons, as
for example coal operators, builders, plumbers, etc."
He then reaches this conclusion: "Surely no one would
contend that such arbitrary selection of persons for the
purposes of legislation upon a subject with respect to
which these persons differ in no particular from other
persons would be justified upon the principle that if a
law deals alike with all of a certain class it is a general
law."

But a reading of the statute discloses that the benefit
of the lien therein created and the special remedy there-
in provided are not conferred upon all of the members
of the legal profession.   The act, by its terms, deals only
with situations where an action or proceeding, either
at law or in equity, has been begun and it extends its
protection and care even in such cases only to the at-
torney of record.   For all of the vastly valuable services
that counsel may render to client which do not result in
the institution either by or against the client of any
action or proceeding at law or in equity, the remedy of
the lawyer who has rendered his services is the remedy
accorded by the law to all creditors alike.   It does not
seem to us to be necessary to elaborate this opinion to
show we have before us a statute which comes within
the prohibition of Article VII, Section 3.   If this act
should be sustained we would soon be enveloped with a
cloud of statutes, special in essence and in fact, general
in name only, resting on artificial and arbitrary classi-
fications.   Thus we would soon have "classification run
mad" or "special legislation under the attempted dis-
guise of a general law.   Of all forms of special legisla-
tion this is the most vicious."   Scowden's App., 96 Pa.
422.   So in time the people of the State would be again
strangled in the sinuous folds of the identical serpent

they had undertaken to crush a half century ago in the written provision of their basic law.

We are of opinion the Act of 1915 is unconstitutional and void and furnished no warrant for the entry of the judgment against the defendant from which it appeals.

Judgment reversed.