## Gordon, Appellant, *v.* Harrison.

Argued May 2, 1932.

514

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE and PARKER, JJ.

*Gifford K. Wright* of *Alter, Wright & Barron,* and with him *Harold D. Saylor,* Deputy Attorney General, and *William A. Schnader,* Attorney General, for appellant.

*John A. Metz,* for appellee.

OPINION BY BALDRIGE, J., July 14, 1932:

David M. Harrison, Esq., a member of the bar of Allegheny County, was appointed attorney for the Pittsburgh Building and Loan Association, January 9, 1928, when it was experiencing financial difficulty. Mr. Harrison's efforts to save the association were unavailing, and, finally, on April 29, 1930, the Banking Department took possession of its assets. On the 6th of August, 1930, the Secretary of Banking presented his petition, under the 30th section of the Banking Act of June 15, 1923, P. L. 809, as amended by the 12th section of the Act of May 5, 1927, P. L. 762 (7 PS 30), praying for an order upon Harrison to turn over

to the petitioner certain moneys collected and held by him belonging to the association. Harrison filed an answer, setting forth that he received as solicitor sums amounting to $5650, all of which he paid over, except $1769.66 retained for professional services. A stipulation was entered into defining the issues involved. After hearing, the court below discharged the rule, and the exceptions filed to this order by the petitioner were dismissed by the court in banc. This appeal followed.

It is conceded by the appellant that the amount claimed for attorney's fees is reasonable for the services rendered, but it is contended that Harrison had forfeited his right to charge and deduct any attorney's fees, as (1) he was guilty of embezzlement, and (2) that he commingled the moneys of the association with his own funds, and failed to pay promptly the amount due the association.

The court below upon sufficient competent evidence concluded that Harrison had not used the association's moneys for his own benefit, or otherwise misappropriated them; therefore, there was no embezzlement.

The more serious question is whether he was guilty of professional misconduct that deserves discipline by depriving him of his compensation.

Prior to, and during the time of Harrison's solicitorship, properties had been bid in at sheriff's sale. Owing to a lack of money, the association was unable to lift the sheriff's deeds. Harrison testified that the directors, at a meeting held in October, 1928, authorized the accumulation of a fund, which should remain in his hands, to lift these deeds; that whatever money was received was with the consent and knowledge of the directors and officers in the fulfillment of this plan; that there was never any dispute about his retaining it, or any demand made therefor, except a request, which was complied with, to return $200 to the asso-

ciation from $800 paid him by the treasurer in October, 1928; that it was deemed desirable that this fund be accumulated in the hands of the solicitor rather than the treasurer of the association, so that it would not be subject to withdrawal by stockholders whose demands were greater than the association was able to pay. Mr. Volk, who was the assistant chief of the building and loan bureau, called as a witness on the part of the appellant, admitted that this policy of accumulating a fund was to the advantage of the association. It is true that on March 23, 1928, which was approximately six months before the formal action of the board above referred to, $456.66 was paid to Harrison in settlement of an equity case instituted against the association by a Nan Biggerstaff, which he retained in his possession. Harrison, on cross examination, testified, however, that he was authorized to retain that sum also toward the creation of this fund. It may be observed in passing that under the statement furnished by Harrison of the amount claimed for professional services, $185 was due him when this money was received. None of the officers or directors of the building and loan association was called by the appellant to contradict Harrison's testimony as to this arrangement to accumulate funds.

Harrison testified further that he kept one active account in the Union Trust Company, in which he deposited money of his own, as well as money belonging to clients; that for 15 years it was his practice, after depositing a check, to transfer all or part of the proceeds in cash to his safe deposit box, as he regarded that a greater safeguard for his clients than keeping the money in a bank account; and that at all times he had sufficient moneys in his possession to pay the demands of the association. The trial judge, in discussing this branch of the case, said: "There is no evidence that any part of the fund in the possession

of respondent was used by him for his own benefit or for any purpose other than that for which it was accumulated. While admitting that he did not at all times have sufficient amount in his checking account, where this fund was deposited, to meet it, he testified he had at all times in a safe deposit box in the trust company where he had his account more than sufficient money to meet all demands made upon him and that he met such demands promptly.''

An attorney is not subject to censure for commingling money belonging to different clients. As a practical matter, he cannot open a separate account for funds received from each client. The blending by an attorney of other person's money with his own, or using it for private purposes, is condemned as a dangerous practice. Funds belonging to clients should be kept intact in a safe place so that they may at all times be available to meet just demands. If a charge against an attorney for breach of faith is made, it should be thoroughly investigated, and, if a want of fidelity is shown, punishment proportionate to the gravity of the offense should be promptly imposed. Although disapproving the manner of keeping his client's funds, we cannot say, in the face of the finding of the court below, notwithstanding the forceful argument of the appellant that Harrison's story is incredible, that this defendant is guilty of professional misconduct requiring punishment by forfeiting his right to fees. The appellate courts have many times stated that the findings of fact by the court below, involving the credibility of witnesses and the weight to be given their testimony, have the effect of the verdict of a jury, when sustained by the court in banc, and will not be disturbed on appeal where there is sufficient supporting testimony: Levy v. Horn & Hardart Baking Co., 103 Pa. Superior Ct. 282. Adopting the language of Mr. Justice Schaffer in Dixon v. Minogue, 280 Pa.

128, 130: "In no class of cases ought the result reached by a trial court where it is based on evidence be of more binding influence on a court of appeal than a proceeding, such as this, involving, as it does, the integrity of one of the members of the bar ministering justice before it. The court of first instance knows the lawyer, his standing, character, credibility and fidelity to trust, in a way we cannot. When the tribunal which hears the proof reaches a conclusion, as the court in this proceeding did, of the respondent's bad faith, fraud and criminal intent, and we find in the record supporting evidence of the misdeeds alleged, it is not for us to interfere."

Very shortly after the Secretary of Banking came into possession of the association, respondent paid to the special deputy in charge the sum of $1903.42. There was another item of approximately $600, which, under Harrison's testimony, he asked to have a day or two to check, as he explained that he thought he was entitled to credit for some moneys expended, but the representative of the Banking Department refused this request and insisted that the entire sum, without any deductions, be immediately paid; and his arrest was then threatened. If fees were due Harrison, the balance was all that could be lawfully demanded: Balsbaugh v. Frazer, 19 Pa. 95; Laplacca v. P. R. T. Co., 68 Pa. Superior Ct. 208; Zinsser v. Zinsser, 83 Pa. Superior Ct. 461. A delay, which may or may not have been entirely excusable, seems to have been due to the different positions taken by the parties. Finally, on September 4, 1930, Harrison paid $518.94. That sum, together with the moneys paid prior thereto, after deducting cash payments of $1,468.28 that Harrison had made from time to time for costs, taxes, recording fees, etc., and professional fees, amounting to $1,769.66, was a full payment of the amount in his hands.

A careful consideration of the entire record and

argument of counsel brings us to the conclusion that the assignments of error are without merit.

Decree of the learned court below is affirmed.